## STATE OF OKLAHOMA v. UNITED STATES CIVIL SERVICE COMMISSION.

### Civil Action No. 1279.

District Court, N. D. Oklahoma.

June 18, 1945.

356

Randell S. Cobb, Atty. Gen., of Oklahoma, for the State of Oklahoma.

Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., and Lawrence V. Meloy and Charles P. Crawley, Civil Service Commission, both of Washington, D. C., for United States Civil Service Commission.

FRANKLIN E. KENNAMER, District Judge.

After the trial and argument and study of the briefs submitted as well as personal research, the Court makes and renders the following findings of fact and conclusions of law:

### Findings of Fact

1. This is an action brought to review an order of the United States Civil Service Commission dated September 7, 1944, wherein the Commission, after a hearing, ordered the suspension from office of France Paris, a member of the Oklahoma Highway Commission, or in lieu thereof that certain federal funds be withheld from the State of Oklahoma upon its refusal to order such suspension. The basis for such order arises by virtue of 18 U.S.C.A. § 61, and succeeding sections, commonly known as the Hatch Act.

2. The proceedings for a review are admitted by the parties to be regular.

3. On or about January 14, 1943, France Paris was appointed by the Governor of the State of Oklahoma and he took the oath of office and assumed his duties as a member of the Oklahoma State Highway Commission. He has held and served in that office continuously since that time.

4. The Oklahoma Highway Commission receives support from and is benefited in part by funds received from an agency of the federal government and did at all times involved herein.

5. Prior to becoming a member of the State Highway Commission, France Paris had been elected chairman of the State Central Committee of the Democratic Party of Oklahoma, which position was held by him upon becoming a member of the Highway Commission and was held continuously by him until he resigned on October 18, 1943, as chairman of the Central Committee of the State Democratic Party.

6. Just before January 14, 1943, there had been a general election held in the State of Oklahoma and the elected officials had taken office by that time. The State Democratic Headquarters of the State Central Committee were closed on January 4, 1943, by France Paris, but were later reopened during the year under the direct charge of the vice-chairman of that committee. During the year 1943, there was no state nor national election which concerned the Democratic State Central Committee and it was therefore a quiescent period for political activity. The principal activity of that committee consisted of staging a "Victory Dinner" in the Skirvin Hotel at Oklahoma City, Oklahoma, on June 14, 1943. This dinner was designed to provide the National Democratic Committee and the State Democratic Committee with funds to discharge a deficit incurred by their political activities and to provide funds for contemplated future activities. It also promoted the sale of war bonds and did result in the sale of approximately $14,500,000 in war bonds. The dinner netted the Democratic party, which was conceded to be a political party, approximately $30,000. The dinner was staged under the general supervision of

the Governor of the state and the details were handled by a committee appointed by the Governor. W. G. Johnston was chairman of this committee. France Paris was an ex officio member of the committee and he advised with the Governor concerning the dinner and called the meeting to order and introduced the toastmaster, but he was not active in planning or arranging the dinner.

7. At no time before starting the proceedings before the Civil Service Commission did any representative of the Civil Service Commission advise either the State of Oklahoma or France Paris that holding the two offices simultaneously constituted a violation of the Hatch Act, and, upon learning that the enforcement branch of the Civil Service Commission contended the Hatch Act was being violated, France Paris resigned at once as chairman of the Central Committee of the State Democratic Party.

8. France Paris is not an attorney. At the hearing before the Civil Service Commission, his attorneys offered to show that prior to the time he became a member of the Oklahoma Highway Commission he consulted private counsel, as well as others, and was advised by them there would be no violation of the Hatch Act for him to serve in both capacities. That tender was refused by the Examiner upon the theory that it was not material. It is not shown by the record who the "others" consulted were, but in the arguments before this Court it was conceded by both sides that among those consulted were the Governor of the State of Oklahoma and the United States District Attorney for the Western District of Oklahoma. There was no evidence indicating that he consulted with or sought the advice of the Civil Service Commission.

9. Prior to the effective date of Title 18 U.S.C.A. § 61l, the Civil Service Commission had ruled that service on a political committee constituted a violation of the Hatch Act, and such ruling had appeared in a pamphlet published and circulated by the Commission.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter.

■ 2. Title 18 U.S.C.A. § 61l (§ 12) does not contravene or violate the Tenth Amendment to the Constitution of the United States. Stewart v. United States Civil Service Commission, D.C., 45 F.Supp. p. 697; United States v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508.

■ 3. Service as chairman of the Central Committee of the State Democratic Party while also serving as a member of the Oklahoma Highway Commission constitutes a violation of the Hatch Act.

■ 4. The Court does not agree with the majority of the Civil Service Commission with respect to the punishment inflicted. The order, requiring the State of Oklahoma to remove Paris or the withholding of federal funds, by the majority of the Commission appears to be unduly harsh. But the violation having been established, the penalty to be invoked was within the discretion of the Commission. This Court is without power to substitute its judgment for that of the Commission.

5. The order of the majority of the Civil Service Commission is according to law and there are no disputed questions of fact for the Court to review since all the facts were stipulated.

■ 6. That section of the Hatch Act dealing with review of orders of the Civil Service Commission to the effect that the review shall "Extend to questions of fact and questions of law" and that clause in the same section requiring the court to affirm the order or determination of the Commission if the same is "in accordance with law" when considered together gives the reviewing court no different or greater authority in reviewing findings of fact of the Civil Service Commission than that which reviewing courts have over findings of fact by administrative tribunals generally. Stewart v. United States Civil Service Commission, supra.

7. The Court concurs fully in the conclusions expressed by President Mitchell of the Civil Service Commission, beginning on page 18 of the transcript of the record, but because of the conclusions already stated the Court is powerless to change the order of the majority of the Commission.

8. The order of the majority of the Civil Service Commission under its docket number 122 and dated September 7, 1944, is therefore affirmed.

9. In accordance with the findings of fact and conclusions of law herein, the Clerk of the Court is ordered to enter judgment for the respondent denying the relief

prayed for by the complainant, and the order of the Civil Service Commission is affirmed.