# OKLAHOMA *v.* UNITED STATES CIVIL SERVICE COMMISSION.

No. 84.* Argued October 17, 18, 1946.—Decided February 10, 1947.

128

*Mac Q. Williamson,* Attorney General of Oklahoma, and *James W. Bounds,* Assistant Attorney General, argued the cause and filed a brief for petitioner.

*Ralph F. Fuchs* argued the cause for respondent. With him on the brief were *Solicitor General McGrath, Assistant Attorney General Sonnett, Paul A. Sweeney* and *Samuel D. Slade.*

MR. JUSTICE REED delivered the opinion of the Court.

This proceeding brings to this Court\* another phase of the Hatch Act. The petitioner, the State of Oklahoma, objects to the enforcement by the United States Civil Service Commission of § 12 (a) of the Act.[1]

---

\*See *United Public Workers* v. *Mitchell,* decided today, *ante,* p. 75.

[1] 53 Stat. 1147, as amended, 54 Stat. 767:

"SEC. 12. (a) No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall . . . take any active part in political management or in political campaigns. . . .

"(b) If any Federal agency charged with the duty of making any loan or grant of funds of the United States for use in any activity by any officer or employee to whom the provisions of subsection (a) are applicable has reason to believe that any such officer or employee has violated the provisions of such subsection, it shall make a report with respect thereto to the United States Civil Service Commission (hereinafter referred to as the 'Commission'). Upon the receipt of any such report, or upon the receipt of any other information which seems to the Commission to warrant an investigation, the Commission shall fix a time and place for a hearing, and shall by registered mail

130

France Paris has been a member of the State Highway
Commission of Oklahoma since January 14, 1943.   He
was elected chairman of the Democratic State Central

send to the officer or employee charged with the violation and to the
State or local agency employing such officer or employee a notice set-
ting forth a summary of the alleged violation and the time and place
of such hearing.   At such hearing (which shall be not earlier than ten
days after the mailing of such notice) either the officer or employee
or the State or local agency, or both, may appear with counsel and
be heard.   After such hearing, the Commission shall determine
whether any violation of such subsection has occurred and whether
such violation, if any, warrants the removal of the officer or employee
by whom it was committed from his office or employment, and shall
by registered mail notify such officer or employee and the appropriate
State or local agency of such determination.   If in any case the Com-
mission finds that such officer or employee has not been removed from
his office or employment within thirty days after notice of a deter-
mination by the Commission that such violation warrants his removal,
or that he has been so removed and has subsequently (within a period
of eighteen months) been appointed to any office or employment in
any State or local agency in such State, the Commission shall make
and certify to the appropriate Federal agency an order requiring it to
withhold from its loans or grants to the State or local agency to which
such notification was given an amount equal to two years' compensa-
tion at the rate such officer or employee was receiving at the time of
such violation; except that in any case of such a subsequent appoint-
ment to a position in another State or local agency which receives
loans or grants from any Federal agency, such order shall re-
quire the withholding of such amount from such other State or
local agency: . . . .

"(c) Any party aggrieved by any determination or order of the
Commission under subsection (b) may, within thirty days after the
mailing of notice of such determination or order, institute proceedings
for the review thereof by filing a written petition in the district court
of the United States for the district in which such officer or employee
resides; but the commencement of such proceedings shall not operate
as a stay of such determination or order unless (1) it is specifically
so ordered by the court, and (2) such officer or employee is suspended
from his office or employment during the pendency of such proceed-
ings.   A copy of such petition shall forthwith be served upon the
Commission, and thereupon the Commission shall certify and file in

Committee for Oklahoma for his third term in February 1942 and he occupied such position continuously until October 18, 1943, when he resigned. On October 12, 1943, the Civil Service Commission issued its letter of charges in the matter of France Paris and the State of Oklahoma, in which it notified Mr. Paris and Oklahoma that information which the Civil Service Commission had received war-

the court a transcript of the record upon which the determination or the order complained of was made. The review by the court shall be on the record entire, including all of the evidence taken on the hearing, and shall extend to questions of fact and questions of law. . . . The court shall affirm the Commission's determination or order, or its modified determination or order, if the court determines that the same is in accordance with law. If the court determines that any such determination or order, or modified determination or order, is not in accordance with law, the court shall remand the proceeding to the Commission with directions either to make such determination or order as the court shall determine to be in accordance with law or to take such further proceedings as, in the opinion of the court, the law requires. The judgment and decree of the court shall be final, subject to review by the appropriate circuit court of appeals as in other cases, and the judgment and decree of such circuit court of appeals shall be final, subject to review by the Supreme Court of the United States on certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U. S. C., 1934 edition, title 28, secs. 346 and 347). If any provision of this subsection is held to be invalid as applied to any party with respect to any determination or order of the Commission, such determination or order shall thereupon become final and effective as to such party in the same manner as if such provision had not been enacted.

.          .          .          .          .

"Sec. 15. The provisions of this Act which prohibit persons to whom such provisions apply from taking any active part in political management or in political campaigns shall be deemed to prohibit the same activities on the part of such persons as the United States Civil Service Commission has heretofore determined are at the time this section takes effect prohibited on the part of employees in the classified civil service of the United States by the provisions of the civil-service rules prohibiting such employees from taking any active part in political management or in political campaigns."

ranted an investigation into an alleged improper political activity on the part of France Paris under the provisions of § 12 of the Hatch Act. The charge was that since January 14, 1943, Mr. Paris had been an officer of Oklahoma whose principal employment was and is in connection with an activity financed in whole or in part by loans and grants from a federal agency of the United States and that during such time Mr. Paris also held a political party office, to wit, the chairmanship of the State Central Committee above referred to. It later developed that no general election occurred in Oklahoma in 1943. The State Democratic Headquarters had been closed on January 4, 1943, by Mr. Paris and were later reopened during the year under the direct charge of the vice-chairman of that committee, we assume prior to Mr. Paris' resignation on October 18, 1943. On June 14 the committee sponsored a "Victory Dinner" in Oklahoma City. The trial court found as follows:

> "This dinner was designed to provide the National Democratic Committee and the State Democratic Committee with funds to discharge a deficit incurred by their political activities and to provide funds for contemplated future activities. It also promoted the sale of war bonds and did result in the sale of approximately $14,500,000.00 in war bonds. The dinner netted the Democratic party, which was conceded to be a political party, approximately $30,000.00. The dinner was staged under the general supervision of the Governor of the state and the details were handled by a committee appointed by the Governor. W. G. Johnston was chairman of this committee. France Paris was an ex officio member of the committee and he advised with the Governor concerning the dinner and called the meeting to order and introduced the toastmaster, but he was not active in planning or arranging the dinner."

The Civil Service Commission determined that these facts constituted taking an active part in political management and in political campaigns. It considered that the violation warranted Mr. Paris' removal from the office of Highway Commissioner of Oklahoma. It ordered that notice of the aforesaid determinations be given pursuant to § 12 (b) of the Hatch Act. This order foreshadowed, if Mr. Paris was not removed, a further order by the Commission under § 12 (b) to the appropriate federal agency that certain highway grants to Oklahoma should be withheld "in an amount equal to two years compensation" of Mr. Paris.

Pursuant to § 12 (c) the State of Oklahoma, after having received notice of the Civil Service Commission's determination, instituted these proceedings for the review of the order in the proper district court of the United States. That court upheld the action of the Civil Service Commission, 61 F. Supp. 355, and this action was affirmed by the Circuit Court of Appeals for the Tenth Circuit. *State of Oklahoma* v. *United States Civil Service Commission,* 153 F. 2d 280. Certiorari was sought and allowed because of the importance of the issues involved in the administration of justice, 328 U. S. 831, under § 12 (c), 53 Stat. 1147, as amended, 54 Stat. 767, and § 240a of the Judicial Code.

The state contends that the judgments below are invalid for the following reasons:

"(1) The Hatch Political Activity Act, in so far as it attempts to regulate the internal affairs of a state, is an invasion of the sovereignty of the states in violation of the United States Constitution. It further is invalid as an unlawful delegation of power.

"(2) If valid, the Act applies only to 'active' participation in political management or political campaigns. Such 'active' participation is not shown to be present in this case.

"(3) If valid, the Act did not warrant the United States Civil Service Commission in ordering the removal of a state officer or, alternatively, the application of a penalty to the State of Oklahoma.

"(4) The decisions of the lower courts place an intolerable and unjustified restriction upon the right of an aggrieved person to a complete judicial review under the Hatch Political Activity Act."

*First.* The Government's first contention is that the petitioner, the State of Oklahoma, has no standing to attack the constitutionality of § 12. It is argued that the state has no legal capacity to question the manner in which the United States limits the appropriation of funds through § 12 (a); that § 12 (b) is merely procedural to assure that the statutory requirements are observed and that § 12 (c) is a safeguard against the exercise of arbitrary power by the Commission, not a permission to wage an attack on the entire arrangement.[2]

If this contention is treated as an objection to the state's capacity to bring this suit, as no objection was made until the memorandum for the respondent on the petition for certiorari, it would be out of time. A failure to object in the trial court to a party's capacity is a waiver of that defect. *Parker* v. *Motor Boat Sales,* 314 U. S. 244, 251. On the other hand, if the contention is treated as meaning that no justiciable controversy as to the constitutionality of § 12 (a) exists because petitioner suffers no injury which it may protect legally from the withdrawal by the United States of a portion of a grant-in-aid, the objection, as it questions judicial power to act on that point, is timely although first made in this Court.[3] We think that the

[2] *Massachusetts* v. *Mellon,* 262 U. S. 447, 482; *Perkins* v. *Lukens Steel Co.,* 310 U. S. 113; *Alabama Power Co.* v. *Ickes,* 302 U. S. 464, 479, are cited as authority, together with other cases.

[3] A respondent can support his judgment on any ground that appears in the record. *LeTulle* v. *Scofield,* 308 U. S. 415, 421; *Gainesville* v. *Brown-Crummer Co.,* 277 U. S. 54, 59.

latter position more correctly reflects respondent's contention. The Commission urges the cases listed in note 2 above as showing that the relation between the state and federal government arising out of grants-in-aid are political and that the order of the Commission that Paris be removed was not mandatory. We therefore treat the issue as properly before us.

The issue is whether Oklahoma can challenge the constitutionality of § 12 on statutory review of a Commission order. Subsection (c) gives to any party aggrieved a judicial review of the Commission order. The review is on the entire record and extends to questions of fact and questions of law. The order is to be affirmed if the court determines that it is "in accordance with law." If the court determines the order is not in accordance with law, the proceeding is to be remanded to the Commission "with directions either to make such determination or order as the court shall determine to be in accordance with law or to take such further proceedings as, in the opinion of the court, the law requires." [4] We think the challenge can be made in these review proceedings to the constitutionality of the law upon which the order under review is predicated.

The activities of the Highway Commission of Oklahoma were financed in part by loans and grants from a federal agency during all the pertinent times. This was the organization of which Paris was a member. During the period in question, January 15, 1943, to October 18, 1943, while Paris was also Chairman of the Democratic State Central Committee, the United States through allotment by federal statute contributed over $2,000,000 for the highway work of the Oklahoma Commission. [5] Nothing indicates that these sums were to be received by Oklahoma otherwise than in accordance with regular statutory appor-

[4] See note 1, *supra*, § 12 (c).

[5] See Federal Highway Act, 42 Stat. 212, as amended, 23 U. S. C. § 1–117.

tionment among the states of federal highway funds and we assume the sums were to be so received by Oklahoma. Congress may create legally enforceable rights where none before existed. Payments were not made at the unfettered inclination of a federal disbursing officer or highway agency but according to statutory standards, compliance with which entitled Oklahoma to receive her proper share of the federal appropriations for highway construction through state agencies. If it were not for § 12, Oklahoma would have been legally entitled to receive payment from the federal disbursing office of the sums, including the amount that § 12 (b) authorizes the Civil Service Commission to require the disbursing or allocating federal agency to withhold from its loans or grants.[6] Oklahoma had a legal right to receive federal highway funds by virtue of certain congressional enactments and under the terms therein prescribed. Violation of such a statutory right normally creates a justiciable cause of action even without a specific statutory authorization for review.[7] It may be that before the payment of those funds to Oklahoma Congress could have withdrawn the grant without legal responsibility for such action either in its officers or the National Government. Perhaps, before disbursement, it could add of its own free will any additional requirements but when it erected administrative bars, that is, a condition that a part of the allotment might be withheld by action of the Commission, with judicial review of the Commission's determination, we think those bars left to Oklahoma the right to receive all federal highway funds allotted to that state, subject only to the condition that the limitation on the right to receive the funds complied with the Constitution. Issues presented by this suit, even though

[6] Cf. *Columbia System* v. *United States,* 316 U. S. 407, 422.

[7] See *Deitrick* v. *Greaney,* 309 U. S. 190, 198, 200–201; *Steele* v. *Louisville & Nashville Railroad Co.,* 323 U. S. 192, 202.

raised by a state, are closely akin to private wrongs.[8] Either the state employee or the state may be the party aggrieved and may maintain the action for judicial review. The power to examine into the constitutionality of the conditions was given the federal courts by the grant of the authority to review the legality of the Civil Service order. Therefore when by § 12 a right of review of the Civil Service Commission's order is given to Oklahoma, we are of the opinion that the constitutionality of the statutory basis, § 12 (a), of the order is open for adjudication.

Congress has power to fix the conditions for review of administrative orders.[9] By providing for judicial review of the orders of the Civil Service Commission, Congress made Oklahoma's right to receive funds a matter of judicial cognizance. Oklahoma's right became legally enforceable. Interference with the payment of the full allotment of federal highway funds to Oklahoma made the statutory proceeding to set aside the order a case or controversy between Oklahoma and the Commission, whose order Oklahoma was authorized to challenge.[10] A reading of § 12 will show the special interest Oklahoma had in preventing the exercise of the Civil Service Commission's power to direct that Oklahoma's funds be withheld.[11] It was named as the employer affected by § 12 (a). Notices were sent to it. Funds allotted to Oklahoma were to be withheld under certain conditions. It was a "party aggrieved."[12] When it brought this suit, under this statu-

---

[8] See the discussion in *Colegrove* v. *Green*, 328 U. S. 549.

[9] *American Power Co.* v. *S. E. C.*, 325 U. S. 385, 389.

[10] *Federal Power Commission* v. *Pacific Power & Light Co.*, 307 U. S. 156, 159.

[11] *Chicago Junction Case*, 264 U. S. 258, 266 (Second); *Z. & F. Assets Realization Corp.* v. *Hull*, 311 U. S. 470, 485.

[12] *Federal Power Commission* v. *Pacific Power & Light Co.*, 307 U. S. 156, 159; *Federal Communications Commission* v. *Sanders Brothers Radio Station*, 309 U. S. 470, 476; *American Power Co.* v. *S. E. C.*, 325 U. S. 385, 390; *Parker* v. *Fleming*, 329 U. S. 531.

tory authority, Oklahoma was entitled to a judicial determination as to whether the order of the Civil Service Commission was "in accordance with law." Was the order within the competency of the Commission? That question of competency included the issue of the constitutionality of the basis for the order, § 12 (a).[13]   Only if the statutory basis for an order is within constitutional limits can it be said that the resulting order is legal.   To determine that question, the statutory review must include the power to determine the constitutionality of § 12 (a).

The cases cited by the Government as pointing toward lack of power to adjudicate the constitutionality of § 12

[13] Cf. *Labor Board* v. *Jones & Laughlin,* 301 U. S. 1, 25, 43, 49; *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294, 321–24; *United States* v. *Ruzicka,* 329 U. S. 287, 294.

Judicial review normally includes issues of the constitutionality of enactments and action thereunder.   60 Stat. 237, 243, § 10 (e):

"Scope of Review.—So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action.   It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 7 and 8 or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.   In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

See the full discussion of the "Scope of Review," Legislative History, Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess., p. 213, (e), and p. 278, § 10 (e).

are inapposite. None deny to a court with jurisdiction by statute to review the legality of administrative orders the power to examine the constitutionality of the statute by virtue of which the order was entered. The authorities in note 2 above, relied upon by the Government, do not hold or imply a position contrary to our conclusion. In *Massachusetts* v. *Mellon,* 262 U. S. 447, the Commonwealth and others sought decrees to enjoin the enforcement of the Federal Maternity Act. This Court denied federal jurisdiction, p. 480, because no burden was placed upon a state and no right infringed, p. 482. *Perkins* v. *Lukens Steel Co.,* 310 U. S. 113, denied a manufacturer who desired to sell to the Government the right to question a government official's definition of "locality," which the official was required by statute to make to determine the minimum wages of the "locality" under the Public Contracts Act. The denial of federal jurisdiction to decide the question was because no "litigable rights" to deal with the United States had been bestowed by the statute on the would-be seller, pp. 125 and 127. The prospective seller by statute or otherwise had nothing to do with the conditions of purchase fixed by the United States. *Alabama Power Co.* v. *Ickes,* 302 U. S. 464, denied that the power company had any enforceable legal right to be free of competition, financed by illegal loans, p. 479. This present Oklahoma case is differentiated from each of the foregoing by the authority for statutory review and by the existence of the legally enforceable right to receive allocated grants without unlawful deductions.

We do not think the rule that one may not in the same proceeding both rely upon and assail a statute [14] is applicable to the present situation. In the cases the Govern-

---

[14] See *Hurley* v. *Commission of Fisheries,* 257 U. S. 223; *United Fuel Gas Co.* v. *Railroad Commission of Kentucky,* 278 U. S. 300; *Great Falls Mfg. Co.* v. *Attorney General,* 124 U. S. 581.

ment cites, the litigants had received or sought advantages from the statute that they wished to attack, advantages other than the mere right to sue. What we are concerned with in this case is not an estoppel to sue but the allowable scope of the statutory jurisdiction.

From this point of view, the respondent urges that the Congress did not intend to create a justiciable right broad enough to include an attack upon the constitutionality of § 12 (a). We think the final sentence of § 12 (c), note 1 *supra,* comes near to demonstrating the unsoundness of such a contention. It reads:

"If any provision of this subsection is held to be invalid as applied to any party with respect to any determination or order of the Commission, such determination or order shall thereupon become final and effective as to such party in the same manner as if such provision had not been enacted."

We do not see that this sentence can mean anything other than that the invalidity (unconstitutionality) of any provision of subsection 12 (b) should not affect the determination of the Civil Service Commission. In view of our conclusion hereinafter expressed that § 12 (a) is constitutional, whether the Commission's determination would be enforceable without a particular statutory provision is not involved in this case.

The Government urges that the absence of legislative consideration of attacks on the constitutionality of § 12 through the provision for judicial review negatives "the conclusion that Congress intended Section 12 (c) as an avenue of attack on Section 12 (a)." [15] But we do not agree that this lack of extended discussion of the scope of the judicial review by implication denies to a litigant the right to attack constitutionality. The final form of

---

[15] It cites 86 Cong. Rec. 2354, 2429, 2440, 2468–2474, 9448, 9452; H. Rep. 2376, 76th Cong., 3d Sess., p. 9.

judicial review is different from that first proposed. 86 Cong. Rec. 2468. No change of purpose, however, appears. The proposer of judicial review feared arbitrary action. *Id.*, 2469. Others a violation of political liberty. It was thought the latter objection might be reached without right of judicial review. No one intimated constitutionality could not be reached with judicial review.[16]

---

[16] 86 Cong. Rec. 2470:

"Mr. Lucas. I have great respect for the opinions of the Senator from Nebraska. I rise to ask him a question: Does the Senator from Nebraska believe that the question of political liberty is involved in the pending legislation in any way?

"Mr. Norris. I have not thought so.

"Mr. Lucas. In other words, the Senator does not believe that the political rights of an individual who is charged with violation of the statute are being invaded?

"Mr. Norris. Mr. President, I now understand the Senator's question. I do not believe so. Some honest men who are better lawyers than I am believe those rights are invaded. That question can easily be tested, however, without having the amendment adopted and passed upon. If the political rights of an individual were invaded, then the law would be unconstitutional, and one could get into court immediately by various kinds of applications. The question could be placed before a court and carried to the Supreme Court and that Court could pass upon it. The adoption of the particular amendment in question would not assist in that respect. If the law is unconstitutional, it will be so found very soon, even without the adoption of this amendment, and the law will fall.

"Mr. Lucas. But if the Senator from Nebraska entertains the same view as that entertained by the Senator from Illinois with respect to the invasion of the political rights of an individual, then, I take it, the Senator from Nebraska will agree that in case an individual were charged with violation of the statute he should have his rights determined by the court of last resort?

"Mr. Norris. I agree with the Senator. But we do not need this amendment in order to get a decision on the matter. That is my contention. We could not put anything into the law, however ingenious we might be, which would take away the constitutional rights of any citizen, and if such an attempt were made the citizen could go into court and have the question determined, even without the adoption of language such as contained in the pending amendment."

None of the subsequent changes in the bill are effective to modify this construction of the scope of this judicial review.[17]

*Second.* Petitioner's chief reliance for its contention that § 12 (a) of the Hatch Act is unconstitutional as applied to Oklahoma in this proceeding is that the so-called penalty provisions invade the sovereignty of a state in such a way as to violate the Tenth Amendment [18] by providing for *"possible forfeiture of state office or alternative penalties against the state."* Oklahoma says § 12 (c) "provides that the commencement of an appeal from an order of the Commission: '. . . shall not operate as a stay of such determination or order unless (1) it is specifically so ordered by the court, and (2) such officer or employee is suspended from his office or employment during the pendency of such proceedings. . . .' " The coercive effect of the authorization to withhold sums allocated to a state is relied upon as an interference with the reserved powers of the state.

In *United Public Workers* v. *Mitchell,* decided this day, *ante,* p. 75, we have considered the constitutionality of this provision from the viewpoint of interference with a federal employee's freedom of expression in political matters and as to whether acting as an official of a political party violates the provision in § 12 (a) against taking part in political management or in political campaigns. We do not think that the facts in this case require any further discussion of that angle. We think that acting as chairman of the Democratic State Central Committee and acting, *ex officio,* as a member of the "Victory Dinner" committee for the purpose of raising funds for the Democratic Party and for selling war bonds constitute taking an active

[17] See 86 Cong. Rec. 9446, 9495.

[18] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

part in political management. While the United States is not concerned with, and has no power to regulate, local political activities as such of state officials, it does have power to fix the terms upon which its money allotments to states shall be disbursed.

The Tenth Amendment does not forbid the exercise of this power in the way that Congress has proceeded in this case. As pointed out in *United States* v. *Darby,* 312 U. S. 100, 124, the Tenth Amendment has been consistently construed "as not depriving the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end." The end sought by Congress through the Hatch Act is better public service by requiring those who administer funds for national needs to abstain from active political partisanship. So even though the action taken by Congress does have effect upon certain activities within the state, it has never been thought that such effect made the federal act invalid.[19] As nothing in this record shows any attempt to suspend Mr. Paris from his duties as a member of the State Highway Commission, we are not called upon to deal with the assertion of Oklahoma that a state officer may be suspended by a federal court if § 12 is valid. There is an adequate separability clause. No penalty was imposed upon the state. A hearing was had, conformably to § 12, and the conclusion was reached that Mr. Paris' active participation in politics justified his removal from membership on the Highway Commission. Oklahoma chose not to remove him. We do not see any violation of the state's sovereignty in the hearing or order. Oklahoma adopted the "simple expedient" of not yielding to what she urges is

---

[19] *Veazie Bank* v. *Fenno,* 8 Wall. 533, 547; *Stearns* v. *Minnesota,* 179 U. S. 223, 244; *Florida* v. *Mellon,* 273 U. S. 12; *Helvering* v. *Therrell,* 303 U. S. 218; *Wright* v. *Union Central Ins. Co.,* 304 U. S. 502, 516; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 338.

federal coercion. Compare *Massachusetts* v. *Mellon*, 262 U. S. 447, 482. The offer of benefits to a state by the United States dependent upon cooperation by the state with federal plans, assumedly for the general welfare, is not unusual.[20]

In order to give the Civil Service Commission adequate standards to measure active participation in political activities, Congress adopted § 15 of the Hatch Act, quoted above in note 1. By this section Congress made the test of political activity for state employees the same as the test then in effect for employees in the classified civil service. The Commission had at that time determined that "service on or for any political committee or similar organization is prohibited." This could only mean that service on such a committee was active participation in politics. Such determination was made a matter of record by Senator Hatch in charge of the bill during debate on the scope of political prohibition.[21] Obviously the activities of Mr. Paris were covered by the purpose and language of § 12. The words of § 12 (a) requiring Mr. Paris' abstention from "any active part in political management or political campaigns" are derived from Rule I of the Civil Service Commission and have persisted there since 1907.[22]

Oklahoma also argues that the Civil Service Commission determination that the acts of Mr. Paris constitute such a violation of § 12 (a) as to warrant his removal from his state office is not in accordance with law but arbitrary, unreasonable and an abuse of discretion. The facts of Mr.

---

[20] *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 593–98; *United States* v. *Bekins*, 304 U. S. 27, 51–54. A review of grants-in-aid will be found in 8 American Law School Review, Corwin: National-State Cooperation, 687, 698.

[21] 86 Cong. Rec. 2938, § 15 of exhibit.

[22] See *United Public Workers* v. *Mitchell, ante,* pp. 79–81, notes 4, 5 and 6.

Paris' activities and his connection with the Democratic State Central Committee during his tenure of office as a member of the Highway Commission of Oklahoma have been stated. The Circuit Court of Appeals said, 153 F. 2d at 284, "Manifestly, the Commission had solid footing in the Act for the conclusion that removal of Paris from office was warranted." We agree.[23]

Finally, petitioner says that § 12 (c), note 1, *supra*, authorizes a review of "every minute detail of the case" to "determine whether sufficient facts exist to support the order of the Commission, decide whether the statute has been reasonably and justly applied, and independently resolve the entire question as though the federal court had been the forum in the first instance." The basis for this argument, in so far as it differs from that referred to in the preceding paragraph, is drawn from the language of § 12 (c) that "The review by the court shall be on the record entire, including all of the evidence taken on the hearing, and shall extend to questions of fact and questions of law. . . . The court shall affirm the Commission's determination or order, or its modified determination or order, if the court determines that the same is in accordance with law." As the facts were stipulated and no objection has been taken to the findings of fact, 61 F. Supp. 355, 357 (5); 153 F. 2d 280, 283, the attack, on this issue, is limited to an examination into whether or not the Commission abused its discretion in the order of removal. As heretofore stated, the provisions for review underwent changes during the passage of the Act.[24] As finally

---

[23] See *Jacob Siegel Co.* v. *Federal Trade Commission*, 327 U. S. 608.

[24] See 86 Cong. Rec. 2468–2474; S. 3046 in the House of Representatives, Union Calendar No. 924, June 4, 1940, pp. 4 and 17; H. Rep. No. 2376, 76th Cong., 3d Sess., p. 9. The amendment which resulted in the present form of the section appears at 86 Cong. Rec. 9448.

adopted, however, the reviewing court is directed to remand when it determines that the action of the Commission "is not in accordance with law." § 12 (c).[25] The question of "the removal of an officer or employee," § 12 (b), note 1, *supra,* we think is a matter of administrative discretion. Since under Rule I of the Civil Service Commission the taking of "any active part in political management or political campaigns" had been determined by the Commission to include service on a political committee, see notes 37 and 38 of *United Public Workers* v. *Mitchell, ante,* p. 75, it is clear Mr. Paris' position violated § 15 of the Hatch Act. Note 1, *supra.* It could hardly be said that the determination of the Commission in ordering his removal was an abuse of its discretion. See 61 F. Supp. at 357 (6) and (7); 153 F. 2d at 283–84.

*Judgment affirmed.*

MR. JUSTICE MURPHY and MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE BLACK and MR. JUSTICE RUTLEDGE dissent.

MR. JUSTICE FRANKFURTER, concurring.

It is of course settled that this Court must consider, whenever the question is raised or even though not raised by counsel, the jurisdiction of the lower federal courts as well as the jurisdiction of this Court. *Mansfield, C. & L. M. Ry.* v. *Swan,* 111 U. S. 379, 382. But whether a State has standing to urge a claim of constitutionality under a

---

[25] The following also appears in the section:

"The Commission may modify its findings of fact or its determination or order by reason of the additional evidence so taken and shall file with the court such modified findings, determination, or order, and any such modified findings of fact, if supported by substantial evidence, shall be conclusive." 54 Stat. 767, 769.

Congressional grant-in-aid statute does not involve "jurisdiction" in the sense of a court's power but only the capacity of the State to be a litigant to invoke that power. In this litigation the Government did not challenge the standing of Oklahoma to question the constitutionality of the Act until the case came here. I think it is too late to raise that question at this stage. Assuming that it is here, it is my view that under the Hatch Act, in the legislative and judicial context in which it must be read, the State can question only the correctness of the procedure and the determination of the Civil Service Commission, not the validity of the Act. Section 12 (b), (c), 54 Stat. 767, amending 53 Stat. 1147, 18 U. S. C. § 61*l* (b) and (c).

The Administrative Procedure Act does not apply to the present case. Act of June 11, 1946, 60 Stat. 237, § 12. That Act will, in due course, present problems for adjudication. We ought not to anticipate them when, being irrelevant, they are not before us. The Act ought not to be used even for illustrative purpose because illustrations depend on construction of the Act.

Apart from the foregoing, I agree with MR. JUSTICE REED's opinion.