# Compatibility of New York City Local Law 19 with Federal Highway Act Competitive Bidding Requirements

New York City Local Law 19, which allows bidders who do not make the lowest bid to be awarded contracts in cases where the lowest bidder has not signed an anti-apartheid certificate, is incompatible with § 112 of the Federal Aid Highway Act, which requires that contracts for federally funded highway projects be awarded on the basis of competitive bidding. The Department of Transportation is therefore obligated to withhold funding for such contracts awarded subject to Local Law 19.

When Congress elects to distribute federal funds to states it may attach conditions to their distribution and, so long as those conditions are valid and clearly expressed, a state has no sovereign right to obtain or retain those federal funds without complying with the stated conditions. The Act's conditioning of federal highway construction grants on compliance with competitive bidding requirements is valid and clearly expressed.

By imposing disadvantages on a class of responsible contract bidders, Local Law 19 discourages responsible contractors from bidding and undermines the competitive bidding process. This departure from competitive bidding procedures was not justified by considerations of cost-effectiveness, as required by the Act.

June 30, 1986

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
DEPARTMENT OF TRANSPORTATION

## I. Introduction and Summary

This memorandum responds to your request for the opinion of the Attorney General on the question whether the Secretary of Transportation must withhold approval for payments under the Federal Aid Highway Act (Act) for any contract which has been awarded pursuant to a bidding process subject to New York City Local Law 19 (Local Law 19).[1] Section 112 of the Federal Aid Highway Act of 1958, as amended, 23 U.S.C. § 112, requires the Secretary to withhold approval for contracts for locally administered highway construction projects funded in whole or in part by the federal government unless the contracts are awarded through competitive bidding.

The provisions of Local Law 19 impose certain disadvantages in the bidding process for city contracts on bidders who fail to sign an anti-apartheid certificate stating that they have not, within the previous twelve months and for the

---

[1] The Attorney General has delegated his responsibility for rendering opinions to government agencies to the Assistant Attorney General, Office of Legal Counsel. 28 C.F.R. § 0.25.

term of the impending contract, done business with, and have neither bought from nor sold goods to certain agencies of the government of the Republic of South Africa or Namibia. Moreover, in the case of a contract to supply goods, the City requires the contractor to certify that none of the goods to be supplied to the City originated in South Africa or Namibia. 13 N.Y.C. Code § 343.11.0(a).[2] These certification conditions are not required by any federal law or executive order.[3]

Section 343.11.0(b) provides that if a bidder complying with the anti-apartheid certification makes a bid no more than five percent higher than a low bid submitted by a non-complying contractor, both bids are to be passed on to the New York Board of Estimate which "may determine that it is in the public interest that the contract shall be awarded to other than the lowest responsible bidder."[4] New York City has declared that it will apply Local Law 19 to federally funded projects.

[2] Section 343.11.0(a) provides:

With respect to contracts described in subdivision b and c of this section, and in accordance with such provisions, no city agency shall contract for the supply of goods or services with any person who does not agree to stipulate to the following as material conditions of the contract if there is another person who will contract to supply goods or services of comparable quality at the comparable price:

(1) that the contractor and its substantially owned subsidiaries have not within the twelve months prior to the award of such contact sold or agreed to sell, and shall not during the term of such contract sell or agree to sell, goods or services other than food or medical supplies directly to the following agencies of the South African government or directly to a corporation owned or controlled by such government and established expressly for the purpose of procuring such goods and services for such specific agencies: (a) the police, (b) the military, (c) the prison system, or (d) the department of cooperation and development; and

(2) in the case of a contract to supply goods, that none of the goods to be supplied to the city originated in the Republic of South Africa or Namibia.

Although the term "comparable price" in this section is not defined, § 343.11.0(b) makes clear that an agency must refer any contract in which a complying bid is within five percent of a non-contract bid to the Board of Estimate, which will make the final decision as to its award.

[3] Executive Order No. 12532 forbids government agencies from providing export aid to corporations doing business in South Africa unless they certify that they are adhering to certain principles of nondiscrimination with respect to their employees. The order also forbids the supply of computers to certain South African agencies but contains no general prohibition against contracting with these agencies. *See* 21 Weekly Comp. Pres. Doc. at 1051–54 (Sept. 9, 1985).

[4] Section 343.11.0(b) provides:

In the case of contracts subject to public letting under sealed bids pursuant to section 343 of the charter, whenever the lowest responsible bidder has not agreed to stipulate to the conditions set forth in subdivision a of this section and another bidder who has agreed to stipulate to such conditions has submitted a bid within five percent of the lowest responsible bid for a contract to supply goods or services of comparable quality, the contracting agency shall refer such bids to the board of estimate which, pursuant to such rules as it may adopt, and in accordance with subdivision b of section 343 of the charter, may determine that it is in the public interest that the contract shall be awarded to other than the lowest responsible bidder.

Section 343 of the N.Y.C. Charter requires a two-thirds vote and the approval of the corporation counsel and the comptroller before any such decision is made. New York City observes that § 343 of the charter applies to all contracts for goods and services exceeding $5,000 and thus allows the Board of Estimate to award contracts to contractors other than the low bidder regardless of the applicability of Local Law 19. Therefore, New York City argues, Local Law 19 cannot be deemed to violate § 112, because it does no more than refer certain contracts for consideration under a standing procedure to which the Secretary of Transportation has not heretofore objected. The short answer to this argument is that the Secretary is not disabled from

Continued

We conclude that application of Local Law 19 to federally funded highway projects administered by New York City would violate 23 U.S.C. § 112. Section 112 clearly reflects a congressional judgment that the efficient use of federal funds afforded by competitive bidding is to be the overriding objective of all procurement rules for federally funded highway projects, superseding any local interest in using federal funds to advance a local objective, however laudable, at the expense of efficiency. By imposing disadvantages on a class of responsible bidders, Local Law 19 distorts the process of competitive bidding in order to advance a local objective unrelated to the cost-effective use of federal funds. Accordingly, the Department of Transportation is obligated to withhold funding for highway construction contracts subject to Local Law 19.[5]

## II. Analysis

Under the Supremacy Clause,[6] state or local action must give way to federal legislation passed pursuant to one of Congress' enumerated powers where the "act of Congress fairly interpreted is in actual conflict with the law of the State" or state subdivision. *Florida Lime & Avocado, Inc.* v. *Paul*, 373 U.S. 132, 142–43 (1963). It is well-settled that Congress, pursuant to its taxing and spending powers under Article I, § 8 of the Constitution, is authorized to disburse federal funds to the states for particular programs and to "fix the terms on which it shall disburse federal money." *Pennhurst State School and Hospital* v. *Halderman*, 451 U.S. 1, 17 (1981). Accordingly, when Congress elects to distribute federal funds to states, it may attach conditions to their distribution. So long as the conditions are valid and clearly expressed, *id.*, "[r]equiring States to honor their obligations voluntarily assumed as a condition of federal funding . . . simply does not intrude on their sovereignty." *Bell* v. *New Jersey*, 461 U.S. 773, 790 (1983). "If the conditions [are] valid, the State has no sovereign right to retain [federal] funds without complying with those conditions." *Id.* at 791.

---

[4] (. . . continued)

challenging the application of a provision to federal contracts which has not been brought to her attention previously. While the issue of the legality of § 343, considered by itself, is not directly before us, we believe that its application to federally funded highway projects would raise many of the same issues as does application of Local Law 19. We note, however, that Local Law 19 is different from § 343 in that it singles out a specific group of contractors and declares that, in certain circumstances, their low bids *must* be referred to the Board of Estimate for potential disapproval. Therefore, the Secretary is wholly justified in being more concerned about Local Law 19 than § 343, because the latter does not single out a particular class of contracts for mandatory reference to the Board of Estimate.

[5] This Office has been informed that legislation is being considered by Congress that would direct the Secretary to approve payments under the Federal Aid Highway Act for contracts entered by New York City before October 1, 1986, regardless of the application of Local Law 19. The stated purpose of this legislation is to provide time for the Department of Justice to render an opinion on the issue of the legality of the application of Local Law 19 to federal programs. Our opinion, of course, considers the legality of Local Law 19 under existing federal law and does not purport to evaluate the effect of pending legislation on the Secretary's obligation or authority to withhold approval for New York City highway construction projects using federal funds.

[6] U.S. Const. art. VI, § 2.

103

The Supreme Court has specifically upheld Congress' attachment of conditions to the distribution of federal highway funds. In *Oklahoma* v. *United States Civil Service Comm'n*, 330 U.S. 127 (1947), the Court upheld a federal denial of highway funds to Oklahoma because of the state's failure to observe the requirements of the Hatch Act. Congress had conditioned states' receipt of federal highway funds on compliance with that Act. The Court stated: "While the United States is not concerned with, and has no power to regulate, local political activities of state officials, it does have the power to fix the terms upon which its money allotments to states shall be disbursed." *Id.* at 143.

New York City does not dispute that the competitive bidding conditions imposed by § 112 of the Federal Aid Highway Act are valid exercises of the congressional spending power and conditions which DOT is therefore obligated to enforce. Careful examination reveals that Local Law 19 is in clear conflict with these conditions.[7]

Section 112 applies to all highway projects using federal funds "where construction is to be performed by the State highway department or under its supervision." 23 U.S.C. § 112(b).[8] The first two sentences of § 112(b) provide:

> Construction of each project . . . shall be performed by contract awarded by competitive bidding, unless the State highway department demonstrates, to the satisfaction of the Secretary, that some other method is more cost effective. Contracts for the construction of each project shall be awarded only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility.[9]

A version of this provision has governed the process for awarding highway contracts since 1954, when the Senate insisted on amending the Federal Aid

---

[7] Because our opinion rests on the actual conflict between Local Law 19 and 23 U.S.C. § 112, we need not reach the question whether application of Local Law 19 to federally funded projects impermissibly burdens foreign commerce or intrudes into a field of foreign affairs which is uniquely the concern of the federal government.

[8] Section 112(d) makes clear that the phrase "under [the] supervision [of the State highway department]" in § 112(a) is intended to make that section apply to local subdivisions, such as New York City, as well as to State highway departments. Section 112(d) provides:

> No contract awarded by competitive bidding pursuant to subsection (b) of this section, and subject to the provisions of this section, shall be entered into by any State highway department *or local subdivision of the State* without compliance with the provisions of this section, and without the prior concurrence of the Secretary in the award thereof.

(Emphasis added.)

[9] The last sentence of § 112(b) provides:

> No requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project, or to the Secretary's concurrence in the award of a contract to such bidder for a project, unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications.

This sentence was added to the Federal Highway Act of 1968, Pub. L. No. 90-495, 82 Stat. 830 (1968), in order to assure that the federal requirements of equal employment opportunity mandated by Executive Order No. 11246 be advertised before the bidding so that contractors would know what was expected of them. *See* S. Rep. No. 1340, 90th Cong., 2d Sess. 16–18 (1968). The provision is manifestly not a *carte blanche* for the state to impose additional requirements of its own choosing unrelated to cost-effective use of federal funds. By the terms of this provision, any state requirement must be "otherwise lawful" and therefore cannot interfere with the competitive bidding requirement established by the first two sentences of the section.

Highway Act of 1954 to require competitive bidding "unless the Secretary finds some other method is in the public interest." Pub. L. No. 83–350, § 17, 68 Stat. 71 (1954).[10]

The Surface Transportation Assistance Act of 1982, Pub. L. No. 97–424, 96 Stat. 2106 (1983), strengthened the competitive bidding requirement by eliminating the public interest exception and imposing the current requirement that departures from competitive bidding be justified by a demonstration by the local highway department that the alternative is more cost-effective. The legislative report accompanying the amendment reflects the concern of Congress that cost-effectiveness be the only criterion by which to award contracts to responsible bidders for highway projects funded by the federal government. *See* H.R. Rep. No. 555, 97th Cong., 2d Sess. 11 (1982). The 1982 amendments therefore make clear that the efficient use of federal funds is the touchstone by which the legality of state procurement rules for federally funded highway projects is to be tested.

Local Law 19 contravenes the clear requirement of § 112 that all contracts be awarded through a process of competitive bidding to the responsible bidder who submits the lowest bid; the local ordinance frustrates the manifest congressional mandate reflected in the statute and its legislative history to make the most cost-effective use of federal highway funds.[11] By imposing disadvantages on a certain class of contractors, New York City discourages responsible contractors from bidding and undermines the competitive bidding process.[12] New York City has failed to justify, as required by the statute, its departure from competitive bidding procedures by considerations of cost- effectiveness.[13]

---

[10] The Senate proposed the amendment requiring competitive bidding. *See* S. Rep. No. 1093, 83d Cong , 2d Sess 14 (1954) (stating that the requirement is designed to prevent "collusion or any other action in restraint of free competitive bidding"). After the House acceded to the Senate amendments, one Senator hailed the bidding provision as one of the most important achievements of the entire bill. 100 Cong. Rec. 5124 (1954) (remarks of Sen. Gore).

[11] New York City argues that this congressional mandate is somehow undercut by 23 U.S.C § 145, which states:

The authorization of the appropriation of Federal funds or their availability under this chapter will in no way infringe on the sovereign rights of the States to determine which projects will be financed. The provisions of this chapter provide for a federally-assisted State program.

A provision permitting states to choose their own projects obviously has no bearing on the issue of whether Congress has restricted the permissible procurement procedures for such projects in the interest of the cost-effective use of federal funds.

[12] There can be no doubt that an otherwise qualified contractor who fails to furnish an anti-apartheid certificate is still a "responsible" bidder. Local Law 19 itself acknowledges that the requirements of the anti-apartheid statute are not criteria of responsibility, because § 343.11.0(b) refers to "the lowest *responsible* bidder who has not agreed to [the anti-apartheid certificate]." (Emphasis added.)

[13] Indeed, because the primary purpose of the anti-apartheid certification requirement is "to send a message to the government of the Republic of South Africa and to encourage those who do business there to support change," *see* New York City Local Law 19, § 2, Local Law 19 is not designed to promote cost efficiency, but to express a well-justified abhorrence of apartheid. To be sure, the ordinance states that it "also seeks to protect the financial interest of the city by limiting the number of city contracts which may depend for their satisfaction on the internal security of South Africa, where relentless oppression has led to increasing civil disturbances, making sabotage of business interests and even revolution possible." Under certain circumstances, such considerations may very well affect the cost-effectiveness of a given contractual arrangement. New York City has not, however, provided the Secretary with any evidence for the proposition that a particular company's contractual agreement with an agency in South Africa will endanger an unrelated contractual agreement to be performed in New York City on a highway construction project.

New York City has attempted to defend the legality of its ordinance by observing that all contractors that have bid for its contracts have furnished the anti-apartheid certificate and that there is no evidence that any potential bidder would not be able to comply with the requirement. Thus, the City argues that its anti-apartheid certification requirement has not been shown to affect adversely the efficient use of federal funds. This argument is unavailing, however, because it attempts to reverse the burden of proof that § 112 requires to justify departures from competitive bidding. In order to satisfy this burden, New York City must demonstrate that its procedures lead to a more cost-effective use of federal funds; it cannot shift the burden to the Secretary of Transportation to demonstrate that the City's procedures detract from cost-effectiveness.[14]

Second, New York City argues that its ordinance does not violate § 112 because it is not an absolute bar to the award of contracts to contractors who submit the lowest bid for a project but fail to provide an anti-apartheid certificate. According to the provisions of Local Law 19, a non-complying bidder is awarded the contract unless a complying bidder is within five percent of the low bid. Moreover, New York City emphasizes that even when there is less than a five percent differential between a complying and non-complying bidder, the Board of Estimate must still vote by a two-thirds majority to award the contract to the complying bidder rather than the non-complying bidder. The short answer to this argument is that § 112 requires that the contracts be awarded through a process of competitive bidding, not simply that contracts be awarded by a process that may lead to the award of the contract to the lowest bidder. This distinction is important, because the knowledge that a contract will be awarded through a strict process of competitive bidding in itself contributes to the cost-effective use of federal funds by encouraging the submission of bids by contractors who might not otherwise participate. Conversely, a contractor's knowledge that he may submit the low bid and yet not win the contract would deter him from entering the bidding process and incurring bid preparation costs.[15] Only a process which strictly adheres to the competitive bidding requirement comports with Congress' overriding objective of cost-effective-

---

[14] We do not read 28 C.F.R. § 635 108 as a decision by the Secretary through regulation to shoulder the burden of proof on the issue of cost-effectiveness. Section 635.108 provides:

> No procedure or requirement for prequalification or licensing of contractors will be approved which, in the judgment of the Federal Highway Administration, *may* operate to restrict competition, to prevent submission of a bid by, or to prohibit the consideration of a bid submitted by, any responsible contractor whether resident or nonresident of the state wherein the work is to be performed.

(Emphasis added.)

Because the administrator must still disapprove the procedure if the procedure may restrict competition (*i.e.*, has the potential to restrict competition), the burden of showing that the procedure does not restrict competition still rests with the locality.

[15] The contractor who does not sign the anti-apartheid certificate knows that in the event of a complying bid that is within five percent of his bid, he will have to persuade the Board of Estimate to award the contract to him, notwithstanding his refusal to comply. The rational bidder would therefore revise his price to reflect the costs associated with lobbying the Board of Estimate on this issue. Thus, even if the contract is awarded to the non-complying bidder, it is reasonable to expect that his bid would be higher than it would be without the application of Local Law 19.

ness by maximizing the number of contractors who will bid for the contract and increasing the likelihood that the contract will be let for the lowest possible price.[16]

Since the provisions of Local Law 19 conflict with the requirement of competitive bidding contained in § 112(b), it is clear that 23 U.S.C. § 112(d) requires the Secretary to withhold approval for contracts let subject to the provisions of Local Law 19.

For the foregoing reasons, we believe that the Secretary of Transportation is obligated to withhold federal funds under the Federal Aid Highway Act for the payment of contracts whose award is subject to the procurement provisions of Local Law 19.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[16] New York City's argument that the Secretary of Transportation may not disapprove contracts awarded under Local Law 19 until New York City actually withholds a contract from a low bidder under that ordinance merits a similar response. The Secretary is obligated to act when New York City's procurement procedures depart from the process of competitive bidding required by federal law, rather than when New York City declines to accept a low bid.