Frank and Lisa O'CONNELL as legal representatives of their daughter, Kelli–Ann O'Connell, Petitioners,

v.

SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 96–63 V.

United States Court of Federal Claims.

May 13, 1998.

Reissued for Publication May 21, 1998.*

* This Order was originally entered by the court on May 13, 1998, as an unpublished ruling. This reissuance as a published order follows in response to respondent's oral request for publication.

Brian A. O'Connell, Wellesley, MA, for petitioners.

Kate Adam Coleman, U.S. Department of Justice, Washington, DC, for respondent.

ORDER

AFFIRMING SPECIAL MASTER'S DECISION

WIESE, Judge.

This case comes before the court on petitioners' motion for review of the decision of the special master, entered February 2, 1998, denying a claim to compensation under the National Childhood Vaccine Injury Act of 1986, Pub.L. No. 99–660, 100 Stat. 3755 (codified, as amended, at 42 U.S.C. §§ 300aa–1 to 300aa–34 (1994 & Supp. I 1995)) for neurological injuries—encephalopathy and residual seizure disorder—allegedly sustained by their daughter, Kelli–Ann, as the result of a diphtheria-pertussis-tetanus ("DPT") vaccine administered on February 9, 1991.

I

A

To prevail on their claim, petitioners were required to show, by a preponderance of the evidence, that the vaccine was the cause in fact of Kelli–Ann's impairments. They did not succeed. The special master's decision rejecting petitioners' claim starts with the proposition, acknowledged by both parties' experts, that a DPT-caused neurological injury is distinguished or identified by the occur-

rence of an acute encephalopathic event within the first seventy-two hours of the vaccine's administration. Petitioners' proof fell short of meeting this requirement on two basic grounds.

First, the special master declined to find, for lack of substantiation in the contemporaneous medical records, that, on the day following her receipt of the vaccine, Kelli–Ann experienced a seizure-related diminution of consciousness that lasted up to one-half hour. (The medically recognized significance of such an event, coupled with the absence of any noted reference to it in the medical histories that were prepared on and immediately after the day in question, persuaded the special master that the testimony describing such an event that was offered at the hearing, though honestly given, had been colored by the passage of time).

Second, the special master rejected the position asserted by petitioners' expert, Dr. Marcel Kinsbourne, that multiple, repeated seizure episodes occurring over a brief period of time, even though interspersed with returns to full alertness, could be regarded as status epilepticus, *i.e.*, a seizure condition lasting in excess of one half hour. (The rejection was founded on the testimony of respondent's expert, Dr. Fenichel, who testified that "[j]ust having a seizure, recovering, and having another seizure is not status epilepticus. You have to have a series of seizures in which you have no recovery to normal function in between seizures.")

### B

In their appeal to this court, petitioners raise two broadly related issues. First, they contend that the special master erred as a matter of law in adopting, as a requirement in the proof of a DPT-caused non-Table injury, evidence of the occurrence of a serious neurological illness, as demonstrated through a seizure-related period of reduced consciousness occurring within the first three days following immunization. That standard of proof, petitioners contend, simply mimics the more restrictive requirements now recognized in the Vaccine Act for the proof of a DPT-caused Table injury and thus, as a practical matter, precludes the availability of relief to all claimants whose DPT-related injuries are not initially manifested through an acute encephalopathy that is characterized by a prolonged reduction in consciousness. Petitioners sum up their argument in these words: "In ruling on Kelli–Ann's theory, the Special Master (and the respondent's expert), applied the Table standard (and Table definitions) of "acute encephalopathy" to analyze whether Kelli–Ann had proved her off Table theory.[1] It was an error of law for the Special Master to have done so."

The other point that petitioners raise here concerns the revision to the Vaccine Injury Table that the Secretary of the Department of Health and Human Services introduced in 1995. Among the revisions then made by the Secretary were the elimination of residual seizure disorders from the list of DPT-related Table injuries and the introduction of a more restrictive definition for the identification of a Table-based encephalopathy. The contention put forward here is that neither of these changes can pass constitutional muster—and thus cannot be invoked against petitioners now—because the statutory authority under which they were accomplished—section 300aa–14(c) of the Vaccine Act—represents an impermissible (and inadequate) del-

---

**1.** Pursuant to the Vaccine Injury Table, an encephalopathy occurring within 72 hours of the administration of the DPT vaccine is presumed to be a vaccine-caused illness or injury. 42 U.S.C. § 300aa–14(a) (1994 & Supp. I 1995), *amended by* 42 C.F.R § 100.3 (1997).

The "Qualification and aids to interpretation" that accompany the Vaccine Injury Table instruct that an encephalopathy within the meaning of the Table requires an injury, *i.e.*, an encephalopathy, having both acute (immediate) and chronic (persistent) effects. More particularly, an acute encephalopathy is defined as an encephalopathy that is "sufficiently severe so as to require hospi-

talization (whether or not hospitalization occurred)" and, in the case of children less than 18 months of age who present without an associated seizure event, the encephalopathy, is "indicated by a significantly decreased level of consciousness lasting for at least 24 hours." 42 C.F.R. § 100.3(b)(2)(i)(A). As to those children less than 18 months of age who present following a seizure (Kelli–Ann's case), the aids to interpretation instruct they shall be viewed "as having an acute encephalopathy if their significantly decreased level of consciousness persists beyond 24 hours and cannot be attributed to a postictal state (seizure) or medication." *Id.*

egation of Congress' law-making functions to the Secretary.

## II

The court cannot endorse either of petitioners' arguments—the first, because it misapprehends the basis of the special master's decision; the second because it raises an issue we lack the jurisdiction to decide. We discuss these arguments below.

■ To start with, petitioners assert that, because the Vaccine Act recognizes a claimant's right to seek relief for alleged vaccine-related injuries that do not meet the clinical criteria called out in the Vaccine Injury Table, it necessarily follows—so petitioners would argue—that the proof of such injuries may rest on clinical data different from that specified in the Vaccine Injury Table. And since the special master's decision allegedly failed to recognize and preserve this distinction, her decision is said to be wrong as a matter of law.

The problem with the argument is that it misapprehends the reasons that led the special master to reject their claim. The special master did not reject petitioners' claim for failing to meet the requirements of an acute encephalopathy as defined in the Vaccine Injury Table. That point is never mentioned in the special master's decision. Rather, the claim was rejected because it failed to meet *any* medically endorsed definition of acute encephalopathy. A brief look at the evidence makes this clear.

At the hearing on their claim, petitioners offered the testimony of Dr. Marcel Kinsbourne, a board-certified pediatric neurologist currently serving as research professor at the Center for Cognitive Studies, Tufts University, Massachusetts. Dr. Kinsbourne's testimony, offered to a degree of medical certainty, was that Kelli–Ann's seizure disorder was due to an acute encephalopathy—manifested, in this instance, through a seizure-related period of unconsciousness that continued for a period of thirty minutes—that was experienced within 24 hours of the vaccine's administration. Dr. Kinsbourne also expressed the opinion that the multiple seizures that Kelli–Ann experienced during that same time frame, even though punctuated with returns to full alertness, were also indicative of an acute encephalopathy.

Neither of these opinions carried the day. As noted earlier in this Order, the first position failed for lack of factual corroboration (the relevant medical records did not bear out the occurrence of a thirty-minute period of seizure-associated unconsciousness) and the second position was rejected on the basis of opposing expert opinion (the opinion of Dr. Fenichel declaring that multiple seizures interspersed with returns to full alertness presented a condition diagnostically distinguishable from prolonged unconsciousness).

These being the grounds on which the decision against them was based, it is clear that petitioners' claim was not rejected for failure to meet the criteria of a Table injury.

■ Turning to petitioners' other argument—their contention that the Secretary's authority to revise the Vaccine Injury Table represents an impermissible delegation of law-making authority—this presents an issue we lack the power to decided.

Under the Vaccine Act, the Office of Special Masters is vested with authority to decide claims seeking compensation for alleged vaccine-caused injuries, 42 U.S.C. § 300aa–12(d)(3)(A), while this court, in turn, is charged with reviewing the decisions of that Office to insure their justifiability in fact and correctness in law, 42 U.S.C. § 300aa–12(e). Given these very specific and, indeed, very limited grants of power, neither forum—not the Office of Special Masters nor this court sitting as a reviewing body—may take up the contention that petitioners are attempting to raise here, namely, that they are entitled to have the merits of their claim evaluated under Table criteria different from those in place at the time the claim was first put forward. Such an assertion, while certainly related to a claim for compensation is not, in itself, *a* claim for compensation nor even a subordinate part of such a claim. It is, rather, the assertion of a wholly independent right the resolution of which demands the exercise of a judicial power substantially different in scope than the power to decide a particular claimant's entitlement to compensation under the Vaccine Act.

What petitioners seek is a declaratory judgment respecting the constitutional legitimacy of 42 U.S.C. § 300aa–14(c)—the statute that authorizes the Secretary to promulgate regulations modifying the Vaccine Injury Table. That relief raises an issue that is intimately tied to the power to review the Secretary's regulations and, as such, it is an issue appropriate for consideration by a United States court of appeals pursuant to Section 300aa–32 of the Vaccine Act.[2] *See Oklahoma v. Civil Service Comm'n*, 330 U.S. 127, 138–139, 67 S.Ct. 544, 551–552, 91 L.Ed. 794 (1947) (recognizing that a court granted jurisdiction by statute to review the legality of administrative orders is also empowered to examine the constitutionality of the statute by virtue of which such orders were entered.) The issue lies beyond our jurisdiction to hear and decide.

### III

For the reasons given, the decision of the special master is affirmed. Petitioners' motion for review is denied—in part for lack of merit and, in part, for lack of jurisdiction.

---

**2.** The referenced section, 42 U.S.C. § 300aa–32 reads as follows:

A petition for review of a regulation under this part [referring to the Secretary's authority under 42 U.S.C. § 300aa–14(c)] may be filed in a court of appeals of the United States within 60 days from the date of the promulgation of the regulation or after such date if such petition is based solely on grounds arising after such 60th day.