**Stanley J. BROWN et al., Petitioners-Appellants,**

**v.**

**UNITED STATES CIVIL SERVICE COMMISSION et al., Respondents-Appellees.**

**No. 76-1678.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1977.

Decided April 20, 1977.

[redacted]

William R. Quinlan, Corp. Counsel, Edmund Hatfield, Asst. Corp. Counsel, Chicago, Ill., for petitioners-appellants.

Joyce L. Evans, Asst. Gen. Counsel, U. S. Civil Service Commission, Washington, D. C., Samuel K. Skinner, U. S. Atty., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

On charges brought under the Hatch Act, 5 U.S.C. § 1502(a)(3), which at the pertinent time prohibited political activity by state and local government employees, whose principal employment was in connection with activity financed in whole or in part by loans or grants from the federal government, the United States Civil Service Commission (CSC) on September 19, 1974, determined that the removal of 19 employees of the City of Chicago was warranted.[1]

On October 17, 1974, the 19 city employees and their employer, the City of Chicago, filed a petition for review of the order of the CSC, a petition to set aside and reverse the same, and a petition to stay its enforcement. Two days earlier, on October 15, 1974, Congress had amended the provision claimed to be violated, effective January 1, 1975.[2] On December 17, 1975, approximate-

**1.** Originally 61 city employees had been charged. The administrative law judge hearing the case recommended removal of 24. Upon review by the CSC, this number was cut to 19. For a prior phase of this litigation, see *Smith v. United States Civil Service Commission,* No. 73

C 611 (N.D.Ill. May 1, 1974), *aff'd,* 520 F.2d 731 (7th Cir. 1975).

**2.** Prior to amendment, the pertinent section of the statute, 5 U.S.C. § 1502(a)(3) (1970 ed.), provided:

ly six months after this court's disposition of the *Smith* appeal, petitioners-appellants filed in the district court a brief arguing that the changing and deleting of the law under which the appellants were tried indicated a change in public policy which made any sanctions imposed upon them purposeless. The petitioners-appellants requested a judicial declaration to this effect and an order preventing the CSC from issuing any order causing their removal from employment. Alternatively, the petitioners-appellants requested the court to remand the entire matter to the CSC for a rehearing, the introduction of additional evidence, and a finding consistent with the present public policy established by the action of the Congress.

On April 7, 1976, the district court entered judgment in favor of the respondents on the petitions. Regarding the petitioners-appellants' contention that the amendment of § 1502(a)(3) indicated a change in public policy with respect to the restriction of the activities of individuals in political management and campaigns which made imposition of sanctions extremely cruel and severe, the court noted that its attention had been invited, presumably by the respondents, to 1 U.S.C. § 109.[3] Noting that the enforcement provision of the statute remained unmodified, *i.e.,* 5 U.S.C. § 1506 (1970 ed. and Supp. V, 1975), that no express provision in the Federal Election Campaign Act Amendments of 1974 granted an exception to individuals in a situation such as that of the petitioners-appellants', the court determined that it must regard the former § 1502(a)(3) as if in full force and effect in the review proceeding. Acknowledging that the court was sympathetic to the petitioners-appellants' requests, it ruled that 1 U.S.C. § 109 required a finding

that the first contention was without merit. Apparently concluding that this finding rendered moot the petitioners-appellants' request for a remand, the court passed over that question without discussion, turning instead to the contentions that the ALJ's decision, essentially adopted by the CSC, was arbitrary and capricious. Acknowledging its limited scope of review, the court could not find that the findings of violations of § 1502(a)(3) or the sanctions imposed were arbitrary or capricious and entered the judgment here challenged.

We think the petitioners-appellants' request for a remand to the CSC should not have been passed over without consideration. Initially there appears to be a serious question regarding the applicability of 1 U.S.C. § 109 arising from the uncertainty as to whether a finding that the employees' violations of the prior Hatch Act restrictions on political activity warrant their removal from their jobs can properly be characterized as a penalty, forfeiture, or liability. Because the CSC had not yet sought to enforce the penalty or sanction of withholding funds, the literal language of § 109 might arguably seem not to be directly applicable to the § 1508 review petitions. In the earlier *Smith* appeal in this court, the CSC argued in his brief from *Oklahoma v. United States Civil Service Commission,* 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947), that the conditions established in the Hatch Act for continued participation by state and local entities in federal funding were to give effect to the purposes of the Act rather than to punish an uncooperative participant. Particularly, the CSC relied upon *Oklahoma's* assertion, 330 U.S. at 143, 67 S.Ct. at 554, that "[n]o penalty was imposed upon the state." Of course, the argument in the CSC's *Smith* brief was directed

---

A State or local officer or employee may not take an active part in political management or in political campaigns.

After amendment the section, 5 U.S.C. § 1502(a)(3) (Supp. V, 1975), read as follows:

A State or local officer or employee may not be a candidate for elective office.

**3.** 1 U.S.C. § 109 (1970 ed.), in pertinent part, provides:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

to a defense against the employees' claims that the enforcement of the Hatch Act provisions constituted cruel and unusual punishment within the meaning of the Eighth Amendment. Nevertheless, within that context the CSC argued in *Smith* that not only were the Act's sanctions not criminal in nature but that it was doubtful that they could even be considered as punishment. No doubt, on the other hand, the employees removed from their jobs might regard the matter differently.

Secondly, assuming the existence of punitive aspects of the Hatch Act applicable here, a Supreme Court decision construing 1 U.S.C. § 109 raises a serious question of abatement, *viz.*, *Hamm v. City of Rock Hill,* 379 U.S. 306, 85 S.Ct. 384, 13 L.Ed.2d 300 (1964). There is no indication that this authority was brought to the attention of the district court. With commendable candor, the CSC sets out in its brief the fact that dictum in *Hamm* bears upon the petitioners-appellants' arguments.

In *Hamm,* the Supreme Court found 1 U.S.C. § 109 inapplicable to conduct illegal under state law but protected by the 1964 Civil Rights Act. The Court indicated that § 109 would not annul abatement of a federal conviction inasmuch as the Civil Rights Act substituted a right for a crime. *See* 379 U.S. at 314, 85 S.Ct. 384. The petitioners-appellants in their reply brief seize upon this language as sustaining their contentions, arguing that the repeal of the Hatch Act prohibition of all partisan political activities by very large numbers of state and local government employees restored a right of citizenship to many thousands of individuals, substituting that right for what had been an offense.

█ At the present time, we need only note that the appellants' argument finds support in the decided cases. In *Elrod v. Burns,* 427 U.S. 347, 366, 96 S.Ct. 2673, 2686, 49 L.Ed.2d 547 (1976), the Supreme Court had occasion to explain its earlier decisions regarding the Hatch Act. Specifically, it stated that

[i]n both of those cases [*CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); and *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947)], legislative restraints on political management and campaigning by public employees were upheld despite their encroachment on First Amendment rights . . . .

Later in the opinion, the Court's majority again stated that "political campaigning and management . . . [are] activities themselves protected by the First Amendment." *Id.* at 370–71, 96 S.Ct. at 2688. Applying the principles of *Elrod v. Burns* to the instant proceeding, it is not unreasonable to conclude that the legislative removal of the Hatch Act's prohibition of active participation in political campaigns did, in fact, represent the substitution of a right for an offense. The question, again in the language of *Hamm, supra,* 379 U.S. at 313, 85 S.Ct. at 390, is whether under the particular legislative picture there should be imputed "to Congress an intention to avoid inflicting punishment at a time when it can no longer further any legislative purpose, and would be unnecessarily vindictive."

█ In the light of *Elrod,* we think that much can be said in support of the petitioners-appellants' assertion that *Hamm* is dispositive of the present case. However, the district court never considered the argument and the briefs to this court do not convey much light regarding the Congressional intent to substitute a right for an offense. Although the question of abatement is one of law rather than fact, the legislative history underlying enactment of the Federal Election Campaign Act Amendments of 1974 will provide a proper context for the legal determination. Instead of ordering supplemental briefing on the question, we think it appropriate to remand the case for further proceedings. As noted below, this case must first go back to the CSC for reconsideration of its removal determination. The interests of judicial economy dictate that the district court defer review of the *Hamm* question until that time when the administrative proceeding on remand is complete. Our reason for remanding for reconsideration by the CSC lies in the legal

posture of the case at the time that agency entered its removal order. Even though the CSC is constrained by the statute to decide for or against, removal, no other determination being authorized by statute,[4] the record discloses that the CSC gave at least some weight to the ALJ's statement that

> [o]nly through application of the sanction prescribed by the statute will there be any real prospect of discouraging *this kind* of partisan electioneering by employees who work for the City of Chicago in Federal grant programs. [Emphasis supplied.]

Decision and Order at 24. At the time the CSC entered its order, of course, participation in political campaigns represented a prohibited activity. That is no longer true. It is conceded that the political activities in which petitioners-appellants engaged are no longer proscribed. To the extent that the CSC intended its sanction to discourage public employees of the City of Chicago from circulating nominating petitions and engaging in other political activities in the future, that rationale for the choice of the removal sanction no longer can stand.

We are not unmindful that an attorney for the CSC urged affirmance of the district court judgment in this court by brief and oral argument. We also, however, are not unmindful that the matter of the October 1974 amendment and the impact of that amendment, nullifying, *inter alia,* a rationale of the administrative order under review, was never presented to the Civil Service Commission for its full consideration at a meaningful hearing. We are of the opinion that further exploration of whether removal is warranted should first occur at the administrative level. If the CSC determines that, under all of the circumstances, removal is not necessary in order to further the Hatch Act objectives of Congress, the case will be moot. Conversely, if the CSC steadfastly adheres to its previous position, subsequent judicial review, if sought by the petitioners, will be facilitated by fuller articulation of the views of the agency.

Accordingly, the judgment of the district court is vacated and this cause is remanded to the district court for further proceedings in accordance with this opinion. The district court having heretofore granted a stay of the enforcement of the CSC order pending appeal, and the cause now being remanded for further proceedings, the district court is directed to enter a further order staying enforcement of the CSC order. The duration of this further stay order will be coextensive with the continuance of this litigation.

Vacated and remanded.

---

4. As the CSC observed in its decision of the present cases, " 'Once it is found that a violation has occurred, the Commission is required by the provisions of 5 U.S.C. § 1505 to determine whether the violation warrants removal. Since there is no provision for a penalty less than removal in proceedings under this section, the Commission must either find (1) the violation warrants removal, or (2) the violation does not warrant removal. The statute prescribes no intermediate penalty, such as suspension without pay for 30 days and upwards . . .' *In the Matter of Clarence M. Rogers,* 2 P.A.R. 795, 797.''