ZEL S. RICE II, Secretary, Department of Industry, Labor andHuman Relations
You ask the following questions relative to restriction of political activities of your employes under federal and state legislation:
 "It is my understanding that all DILHR employes, regardless of the source of their funding, whether they are totally funded by federal funds, or totally funded by state funds, are subject to the federal Hatch Act, and to the state laws. Is this correct?
"The types of activity an employe might engage in include:
 "Running for nonpartisan office "Working on the campaign of a person running for nonpartisan office "Running for partisan political office "Working off normal work hours in the campaign of a candidate for pay "Working off normal work hours in the campaign of a candidate on a voluntary basis "Using signs or buttons supporting a candidate in the work area "Using signs supporting a candidate on an automobile parked in a state parking lot "Buying advertising supporting a candidate
 "Which of these are not permitted under state law? Which of these are not permitted under federal law? Which law prevails if they are in conflict?"
Federal Law
The Federal Hatch Act, 5 U.S.C. sec. 1501, et seq., applies to:
 ". . . an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency, but does not include —
 "(A) an individual who exercises no functions in connection with that activity. . . ." *Page 317 
With respect to state or local officers to whom the federal law is applicable the following activities are prohibited by5 U.S.C. sec. 1502:
"(a) A state or local officer or employee may not —
 "(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office;
 "(2) directly or indirectly coerce, attempt to coerce, command, or advise a State or local officer or employee to pay, lend, contribute anything of value to a party, committee, organization, agency, or person for political purposes; or
"(3) be a candidate for elective office."
There are probably employes in your Department whose "principal employment" is not connected with a federally supported activity; and others, such as members of a maintenance staff, who perform no functions connected with such activity. Such employes are subject only to the state law.
As to those who are included in the definition, however, the Hatch Act has been liberalized since its original enactment. It formerly prohibited an employe subject to the Act from taking an "active part in political management or in political campaigns," but that provision was changed to prohibit only being "a candidate for elective office." See Brown v. United States CivilService Commission, 553 F.2d 531 (7th Cir. 1977).
The prohibition against being a candidate for office now relates only to partisan elections, since 5 U.S.C. sec. 1503
provides that the statute:
 ". . . does not prohibit any State or local officer from being a candidate in any election if none of the candidates is to be nominated or elected at such election as representing a party any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected."
In answer to your specific questions with respect to Hatch Act prohibitions which apply to those whose principal employment is in connection with federally supported programs: *Page 318 
1. Such an employe may run for a nonpartisan office.
2. He may work on the campaign of a person running for nonpartisan office either as a volunteer or for pay.
3. He may not run for partisan office.
4. Since 5 U.S.C. sec. 1502 prohibits an employe from using "his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office," the answer in a given case may depend upon whether the employe's official position has an effect upon the election. I believe the safer course would be for an employe subject to the Act to refrain from participation if any of the candidate's issues involves an activity in which the influence of the employe's position may affect a vote. If his position is unrelated to issues involved in the campaign, it is my opinion that he may participate for pay during off-duty hours.
The U.S. Supreme Court indicated in Elrod v. Burns, 427 U.S. 347,370-371 (1976), that "political campaigning and management" are "activities themselves protected by the first amendment." The Constitution, however, protects the use but not the abuse of guaranteed rights.
5. The same tests apply to an employe's working without pay as with pay. He may not participate if his position is such that a vote will be affected by his position rather than by him as an individual.
6. Display of signs and buttons supporting a candidate in the work area is inadvisable for supervisory personnel. I can find no cases or materials directly on point. In the work area, it is difficult to separate the influence of the individual from the position the individual occupies. I believe such display could be construed as using a supervisor's official influence to affect the result of an election as prohibited by 5 U.S.C. sec. 1502 (a). This section could not, however, be applied to nonsupervisory personnel wearing buttons or displaying signs in the work area.
7. The Hatch Act does not apply to all state employes, but only to those whose "principal employment is in connection with a federally supported activity." From the mere display of a sign favoring a candidate on an automobile in a state parking lot, without more, it cannot be determined that there is use of official authority or influence to interfere with or to affect the result of an election. If the *Page 319 
parking lot were limited to an agency receiving federal funds, it might be found to be the use of official authority or influence to affect an election; or there might be additional circumstances which would modify the result. Generally speaking, I do not believe the display of a sign supporting a candidate on a car in a state parking lot is a violation of the Hatch Act.
8. Buying advertising which does not identify the purchaser as supporting a candidate is not subject to any limitations. If the advertisement deals with an issue connected with the federally supported activity and identifies the purchaser, it would be a use of official authority contrary to the Hatch Act as I discussed in paragraphs 4 and 5. If, however, it merely declares the individual's support of the candidate on the basis of competence rather than on his stand on the activity in which the employe is involved, I do not believe it would be classified as a use of official authority.
State Law
The state regulations relating to political activities were revised by ch. 334, sec. 44, Laws of 1973. Section 16.35 now prohibits political activities by a classified civil service employe only "while on state time or engaged in his official duties as an employe" or when not on duty "to such extent that his efficiency during working hours will be impaired or that he will be tardy or absent from his work."
1. An employe may run for a nonpartisan political office if it does not involve use of state time nor interfere with his work.
2. He may work on the campaign of a candidate for such office with the same limitations.
3. Under sec. 16.35 (2), Stats., a civil service employe may run for partisan office only by obtaining leave from state service for the duration of the campaign.
4. State law does not prohibit an employe from working in a political campaign for pay if it is not done on state time or while engaged in his official duties, nor to such an extent as to impair his efficiency or cause him to be tardy or absent from his work.
5. He may work in a campaign without pay subject to the same restrictions. *Page 320 
6. Displaying signs or buttons supporting a partisan candidate in the work area would be contrary to the following provision of sec. 16.35 (1), Stats.:
 "No person holding any position in the classified civil service may during the hours when he is on duty engage in any form of political activity calculated to favor or improve the chances of any political party or any person seeking or attempting to hold partisan political office. . . ."
Signs or buttons supporting nonpartisan candidates are not forbidden.
7. The question whether leaving a sign on a car in a state parking lot is engaging in a "form of political activity" during the hours when he is "on duty" is more difficult.
If the mere display of a sign away from the place of duty were held to constitute engaging in a form of political activity during working hours, a question might arise with respect to displaying a sign on one's home or in one's yard while the employe is on duty. Presumably the car is parked before the employe goes on duty, and removed after his duty is completed.
Since the statute is penal in the sense that it can subject a violator to dismissal from his job, it is subject to the rule of strict construction. It is my opinion that leaving a sign on a car parked in a state lot, while the owner is on duty elsewhere, does not violate the statute.
8. Buying advertising supporting a candidate is subject to the same restriction as in questions 4 and 5, but is not prohibited when it does not interfere with performance of the employe's duties.
You also ask which law prevails in the event of conflict between the state law and the federal law. The federal law applies if the principal employment is in connection with a federally funded activity. Where both are applicable, the more stringent must be observed.
BCL:BL *Page 321