CITY OF BUFFALO, NEW YORK, Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent,

and

Patrick J. Crowley, Intervenor.

No. 373, Docket 83–4096.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1983.

Decided Jan. 20, 1984.

Mary Louise Hayden, Buffalo, N.Y., Asst. Corp. Counsel of the City of Buffalo (John J. Naples, Corp. Counsel of the City of Buffalo, Buffalo, N.Y., of counsel), for petitioner, City of Buffalo.

Louise L. Cavanaugh, U.S. Dept. of Labor, Washington, D.C. (Francis X. Lilly, Deputy Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, Harry L. Sheinfeld, Counsel for Litigation, Washington, D.C., of Counsel), for respondent, U.S. Dept. of Labor.

Patrick J. Quinlivan, Buffalo, N.Y., for intervenor, Patrick J. Crowley.

Before FEINBERG, Chief Judge, and NEWMAN and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

The City of Buffalo petitions for review of a decision of the Secretary of Labor ordering the City to reinstate intervenor Patrick J. Crowley to his former position with the Police Athletic League, Inc. ("PAL"), or to a comparable position with the City, and to award him back pay from the date of his termination to the date of his reinstatement. The issue before us is whether Crowley's attempt to obtain an appointment to an unexpired term on the Common Council of the City of Buffalo violated the ban against political activities of the Comprehensive Employment and Training Act of 1973 ("CETA"), 29 U.S.C. §§ 801–999 (repealed 1982). For reasons indicated below, we deny the City's petition in part, and remand to the Secretary for reconsideration of the remedy.

## I.

In October 1980, Crowley was hired by the Special Projects Administration of the PAL as a Job Club Instructor at a yearly salary of $15,815.00. At that time, and at all relevant times thereafter, the City was a "prime sponsor" under CETA, 29 U.S.C. § 812(c) (repealed 1982), and PAL received CETA funds as a subgrantee under contract with the City.

In December 1980, the representative of the South District on the City Council announced his intention to resign his position. Seats on the Council are elective offices; vacancies, however, are filled by interim appointments made by the remaining Council members. On January 5, 1981, Crowley expressed his interest in the vacancy in a letter to the incumbent councilmen.[1] In his letter, he stated:

---

1. Previously, Crowley had been proposed as a nominee for the vacancy at a meeting of the Democratic Committeemen for the South District. He declined to be considered for the party nomination because of the potential appearance of proscribed political activity.

I would respectfully request your consideration of my interest in the position of South District Councilman and I look forward to discussing it with you at your earliest convenience.

Crowley also spoke to several councilmen about the vacancy.

On January 12, Crowley met with the Director of the City's Division of Employment and Training. The Director informed Crowley that his expression of interest might violate the Hatch Act, 5 U.S.C. §§ 1501–1508. Two days later, Crowley received a letter from David L. Echols, Commissioner of the City's Department of Human Resources. This letter, dated January 12, stated:

[A]ny employee who in any way influences policy and the administration of Federally funded programs may not be a candidate for political office other than running as an elected member of a board of education.

Crowley was asked to "notify this office of [his] intentions." On January 15, Commissioner Echols told Crowley in a telephone conversation that he would apprise the City's Law Department of Crowley's interest in the City Council's seat. But in a letter dated January 16, Crowley was informed by Janet M. Mitchell, the Director of PAL's Special Projects Administration, that his employment was terminated because he had engaged in political activities prohibited by CETA, and had failed to reply to Commissioner Echols's letter dated January 12. At the time of the discharge, Crowley's name had not been placed in nomination for the interim appointment.

Crowley's termination was upheld by the Grievance Subcommittee of the City's Division of Employment and Training, and by Commissioner Echols. The termination was then reversed by the Regional Administrator of the U.S. Department of Labor; the City appealed this decision to the De-

partment's Office of Administrative Law Judges. In a Decision and Order dated February 17, 1983, Deputy Chief Judge Everette E. Thomas ("the ALJ") held that Crowley had been improperly terminated and ordered the City to reinstate him to "the same or comparable position with restoration of full benefits and seniority," and to award him back pay plus interest from the date of his termination to the date of his reinstatement. In reaching this decision, the ALJ concluded that Crowley's termination had been procedurally deficient, because he was not given sufficient time to reply to Commissioner Echols's letter, and substantively improper. On the latter issue, the ALJ determined that Crowley was covered by the Hatch Act's prohibition against "be[ing] a candidate for elective office," 5 U.S.C. § 1502(a)(3), even though he sought an interim appointment, rather than outright election, to a city council seat. The ALJ stated:

The fact that a vacant seat was filled by an appointment rather than an interim election does not alter the elective nature of the office for which the appointment was sought.

He found, however, that Crowley had not violated the prohibition because at the time of his discharge he "had not manifested an intent to be a candidate for elective office."

The ALJ's decision became the final decision of the Secretary. The City, as a prime sponsor under CETA, petitions this court for review of that decision, pursuant to 29 U.S.C. § 817(a) (repealed 1982).[2] It argues that the Secretary's conclusion that Crowley did not engage in forbidden political activity should not stand, and that even if the discharge was improper, the Secretary erred in fashioning the remedy.[3]

## II.

■ CETA's ban against political activities is contained in 29 U.S.C. § 833 (repealed 1982), which states:

---

**2.** Judicial proceedings under CETA begun before September 30, 1984, are not affected by the repeal of CETA. 29 U.S.C. § 1591(e).

**3.** The City also contends that Crowley's termination was not procedurally deficient. It justifies the speed with which Crowley was terminated

by an ostensible concern that it might have lost CETA funds if it had not fired Crowley promptly. Because we find that the discharge was substantively improper, we do not need to address the procedural question.

(a) The Secretary shall not provide financial assistance for any program under this chapter which involves political activities.

(b) Neither the program, the funds provided therefor, nor personnel employed in the administration thereof, shall be, in any way or to any extent, engaged in the conduct of political activities in contravention of chapter 15 of title 5.

Subsection (b) of section 833 incorporates the prohibitions of the Hatch Act. An individual covered by this Act may not "be a candidate for elective office." 5 U.S.C. § 1502(a)(3). We deal with this issue first. In doing so, we do not reach the question whether the Secretary properly concluded that Crowley "had not manifested his intention to be a candidate" for the city council position. We find instead that Crowley's activities were not even covered by the Hatch Act prohibition of 5 U.S.C. § 1502(a)(3) and that the Secretary erred in · not focusing on the distinction between interim appointments and special popular elections.

Reviewing the legislative history of Section 1502(a)(3), we find that Congress intended that this provision be interpreted narrowly. Prior to 1974, this section prohibited taking "an active part in political management or in political campaigns." 5 U.S.C. § 1502(a)(3) (1970); see *Smith v. United States Civil Serv. Comm'n*, 520 F.2d 731, 733–35 (7th Cir.1975). The purpose of the amendment that adopted the current language, according to the Senate Conference Report, was "to provide that State and local officers and employees may take an active part in political management and political campaigns, except that they may not be candidates for elective office." S.Conf.Rep. No. 1237, 93d Cong. 2d Sess., 1974 U.S.Code Cong. & Ad.News 5618, 5669. This language suggests that Congress intended to restrict the prohibition to a narrowly defined set of cases. Such a reading also gains support from the Supreme Court's conclusion that earlier cases, prior to the 1974 amendment, had indicated that legislative restraints on political management and activity, although

constitutional, encroach on First Amendment rights. See *Elrod v. Burns*, 427 U.S. 347, 366, 370–71, 96 S.Ct. 2673, 2688–89, 49 L.Ed.2d 547 (1976) (discussing *United States Civil Serv. Comm'n v. National Assoc. of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) and *United Pub. Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947)); *Brown v. United States Civil Serv. Comm'n*, 553 F.2d 531, 534 (7th Cir.1977).

Following the 1974 amendments, the Civil Service Commission (now the Office of Personnel Management) promulgated regulations pursuant to its authority under 5 U.S.C. § 1302(b). These regulations include two definitions that are relevant to our inquiry:

§ 151.101 Definitions.

In this part:

. . . .

(f) "Election" includes a primary, special, and general election.

. . . .

(i) "Elective office" means any office which is voted upon at an election as defined at § 151.101(f), above, but does not include political party office.

5 C.F.R. § 151.101.

Since Crowley clearly did not attempt to participate in a general election—an election held at a pre-determined time usually for the purpose of filling a number of positions—or in a primary—an election held to choose party nominees for a general or special election—we focus on the term "special election." In light of the legislative history and of the Supreme Court's conclusion that the Hatch Act encroaches on First Amendment rights, we interpret "special election" narrowly to include only popular elections held as a result of a particular emergency, and to thereby exclude an interim appointment by a city council. Congress and the Commission were entitled to conclude that the risks encountered when those covered by the Hatch Act seek the votes of the general public would not arise when those persons seek an appointment to office. The distinction remains

viable even though, as in this case, appointment is for the interim term of an office filled for a regular term by election. Thus, we find that Crowley was not covered by the Hatch Act. We cannot uphold the Secretary's interpretation because in analogizing an interim appointment to a special election, he expanded the coverage of the Hatch Act beyond the limits set by the Civil Service Commission's regulations.[4]

## III.

Next, we discuss whether Crowley's activities, which we have just found did not violate the Hatch Act, may have nonetheless run afoul of some other prohibition of Section 833. In particular, the City argues that this statute prohibits not only political activities, but also the appearance of political activities, and that Crowley's actions created such an appearance. The Secretary did not explicitly deal with this question.

We note at the outset that Section 833 does not contain, on its face, a prohibition against the appearance of political activities. Neither does such a prohibition explicitly appear in the regulations against political activity, promulgated pursuant to the statute and codified at 20 C.F.R. § 676.69 (repealed 1982). The preamble to these regulations, however, states:

> The proposed regulations expanded the prior CETA regulations by stating in § 676.69 that CETA participants shall not be employed in, or outstationed to, a legislative committee or staff, or the office of an elected executive official or chief executive officer or officers of a government.
>
> Many comments were received from persons and groups who believed that the proposed regulations were too restrictive and that many non-political positions exist in these offices that should be acceptable positions for CETA participants.

The proposed regulations have been revised to continue the prior policy of allowing participants to work at non-political activities within the offices of elected or appointed executives with the proviso that no participant may work in the immediate office of chief elected executive officials. The placement of CETA participants in positions in the offices of other elected executive officials will be controlled by specifically requiring prime sponsors to describe how such positions will be effectively separated from any political functions. The Department, however, believes that it is extremely important that political activities, *including the appearance of political activities*, be removed from the CETA program. Consequently CETA participants may no longer be placed on legislative committees or in the immediate offices of chief elected executive officials, since these local officials are the most prominent and visible local elected officials, and are, therefore, most susceptible to charges of using CETA participants for political purposes or as political patronage.

44 Fed.Reg. 19,990, 19,993–94 (1979) (emphasis added); cf. *Nason v. Kennebec County CETA*, 646 F.2d 10, 15–16 (1st Cir.1981) (even before the promulgation of regulations, the ban against the appearance of political activities was written into Department of Labor position papers). The parties differ on how this preamble should be interpreted. The City relies on the emphasized language and it urges us to construe it broadly; respondent argues that the scope of the language is limited by the illustrative examples.

We find that Crowley's activities did not give rise to the type of "appearance of political activities" proscribed by the CETA program. First, we give some weight—but not conclusive weight—to the examples of the preamble. These examples refer exclusively to individuals discharging their CETA responsibilities in local executive or

---

**4.** In view of our disposition, we need not consider the question whether Crowley, by neither seeking nor obtaining the nomination of a political party, could have qualified under the exception of 5 U.S.C. § 1503, which permits nonpartisan candidacies.

legislative branches. The explicit concern is that in such cases the CETA program might be viewed as a vehicle for political patronage. Since at the time he sought a City Council position, Crowley was already employed in a CETA position, it is not clear how his actions could have given rise to similar concerns. Second, we note that the portion of the preamble quoted above indicates that the Department of Labor narrowed the scope of the proposed regulations in response to public comments. In doing so, the Department manifested a concern about imposing excessive constraints on the activities of CETA employees.

Third, we examine the text of the regulations that follow the preamble. These regulations are divided into two subsections, which correspond to the two subsections of 29 U.S.C. § 833 (repealed 1982). The first sentence of subsection (a) states:

> No program under the Act may involve political activities.

20 C.F.R. § 676.69(a) (repealed 1982). The first sentence of subsection (b) states:

> Persons governed by Chapter 15 of Title 5, United States Code, the Hatch Act, shall comply with its provisions as interpreted by the United States Office of Personnel Management.

Id. § 676.69(b). Subsection (b) goes on to expand the scope of those covered by Hatch Act provisions, but does not attempt to define standards different from those of the Hatch Act itself. Thus, the preamble's concern with preventing the appearance of political activity affects only subsection (a) of Section 676.69. This provision should be construed to prohibit not only the involvement of CETA programs in "political activities" but also the appearance of such involvement. This reading is supported by the more specific prohibitions of subsection (a), which precludes a CETA participant from (1) engaging in political activity during hours in which he is paid with CETA funds; (2) engaging in political activity in which he represents himself as a spokesperson of the CETA program; (3) being employed by a federal or state legislator, or legislative committee; (4) being em-

ployed in the office of a prominent executive in state or local government (with exceptions not relevant here); and (5) being employed in executive positions that involve political activity. 20 C.F.R. § 676.-69(a)(1)–(5). All five specific prohibitions indicate a concern that CETA programs may be perceived as being involved in the political sphere. In fact this concern was explicitly voiced in position papers of the Department of Labor distributed prior to the promulgation of the regulations. See *Nason v. Kennebec County CETA*, supra, 646 F.2d at 15.

In summary, Crowley should be found to have violated CETA's prohibition against the appearance of political activity only if his actions gave rise to the perception that a CETA program—not merely Crowley— was involved in politics.

■ We find that in seeking—but not securing—an interim appointment to the Buffalo City Council, Crowley did not create a proscribed appearance. This case is different from *Nason v. Kennebec County CETA*, supra, where an individual who was serving as an elected city council member was hired as a CETA job developer. In *Nason*, the First Circuit upheld, as supported by substantial evidence, the Secretary's determination that such involvement created a prohibited appearance of political activity. 646 F.2d at 19–20. But Nason was hired by CETA *after* his election as a councilman. It is thus possible, as the First Circuit suggested, that the hiring was politically motivated. Id. at 20. Also, by having a managerial CETA position, Nason gave rise to the appearance that he might either influence municipal policy toward the CETA program, or the distribution of CETA positions "so as to advance his own political interests." Id. In contrast, Crowley had obtained a CETA position well before the council vacancy even occurred, never held an elective position and CETA job simultaneously, and apparently had less managerial involvement in CETA than Nason.

The only objective example of possible appearance of political activity mentioned

in the ALJ's order is a footnote indicating that Commissioner Echols was interviewed by a Buffalo newspaper and asked about Crowley's possible candidacy. We do not think that this was sufficient to violate the CETA prohibition. Of course, since at the time Crowley was fired his name had not been placed in nomination, we do not have to deal with the case of a CETA employee actually being nominated for an interim appointment, or with the case of a CETA employee serving on a city council.

## IV.

■ Having found that Crowley's discharge was not justified, we turn to a consideration of the remedy. We find that it is within the Secretary's discretion to order reinstatement and back pay in cases in which a discharge from a CETA position is substantively wrongful. See *Kentucky v. Donovan*, 704 F.2d 288, 292 (6th Cir.1983); 20 C.F.R. § 676.91(c) (repealed 1982). Nonetheless, we remand the case back to the Secretary to determine whether Crowley would have been terminated at the time the CETA program expired. Crowley should be reinstated to his former position, or to a comparable position, only if the Secretary finds that the job Crowley held was not eliminated. However, the Secretary should not refuse to reinstate Crowley merely because that position is no longer funded by CETA.

If the Secretary finds that Crowley would have been terminated when the CETA program expired, the back pay award should be limited to the period from Crowley's wrongful discharge to the elimination of the position. Our instructions on remand are consistent with the view that remedies under CETA should serve the compensatory function of making an improperly discharged employee "whole." See, e.g., *Kentucky v. Donovan*, supra, 704 F.2d at 296; *City of Boston v. Secretary of Labor*, 631 F.2d 156, 161 (1st Cir.1980).

The petition for review is denied in part; the case is remanded for further proceedings not inconsistent with this opinion.