**STATE OF SOUTH DAKOTA, Appellant,**

v.

**Elizabeth H. DOLE, Secretary, United States Department of Transportation, Washington, D.C., in her official capacity, Appellee.**

**No. 85–5223.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1986.

Decided May 21, 1986.

Seventh Circuit, sitting by designation.

Mark V. Meierhenry, Atty. Gen., Pierre, S.D. and J. Wallace Malley, Jr., Asst. Atty. Gen. (amici curiae), Montpelier, Vt., for appellant.

Robert V. Zener, Dept. of Justice, Washington, D.C., for appellee.

Before ARNOLD, Circuit Judge, TIMBERS,* Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

The State of South Dakota appeals the dismissal of its complaint challenging the constitutionality of a 1984 amendment to the Surface Transportation Assistance Act of 1982. 23 U.S.C. § 158. The challenged amendment was enacted under Congress's spending power, U.S. Const. art. I, § 8, cl. 1, and was intended to encourage states to raise their minimum drinking age to twenty-one. Finding no constitutional impediment to Congress's action, we affirm the district court's dismissal of South Dakota's complaint.

## I. Background

The law challenged by South Dakota was enacted by Congress in July of 1984 and provides:

(a)(1) The Secretary [of Transportation] shall withhold 5 per centum of [a State's highway funds] * * * on the first day of the fiscal year succeeding the fiscal year beginning after September 30, 1985, in which the purchase or public possession in such State of any alcoholic beverage by a person who is less than twenty-one years of age is lawful.

(2) The Secretary [of Transportation] shall withhold 10 per centum of [a State's highway funds] * * * on the first day of the fiscal year succeeding the second fiscal year beginning after September 30, 1985, in which the purchase or public possession in such State of any alcoholic beverage by a person who is less than twenty-one years of age is lawful.

(b) The Secretary [of Transportation] shall promptly apportion to a State any funds which have been withheld * * * under subsection (a) of this section * * * if in any succeeding fiscal year such State makes unlawful the purchase or public possession of any alcoholic bever-

age by a person who is less than twenty-one years of age.

* * *

23 U.S.C. § 158.

In essence, that law requires the Secretary of Transportation (Secretary) to withhold a percentage of a state's federal highway funds in fiscal years 1987 and 1988 if, by October 1, 1986, the state has not adopted a minimum drinking age of twenty-one. *Id.* § 158(a). Funds withheld in 1987 (five percent) and 1988 (ten percent) may be reapportioned to a state if the state "in any succeeding fiscal year" raises its minimum drinking age to twenty-one. *Id.* § 158(b).

South Dakota presently allows individuals under the age of twenty-one to purchase certain types of alcoholic beverages. As a result, South Dakota will be ineligible to receive five percent of its 1987 (approximately $4,000,000) and ten percent of its 1988 (approximately $8,000,000) federal highway funds unless it adopts a minimum drinking age of twenty-one. South Dakota argues that Congress, by enacting this law, has impermissibly impaired the state's exclusive and constitutionally protected right to regulate the consumption of alcoholic beverages within the state and as a consequence has violated both the twenty-first amendment and the tenth amendment of the United States Constitution.

In response, the Secretary concedes the state's broad power to regulate extensively the traffic, sale, manufacture, and consumption of alcohol within the state. The Secretary also concedes that incident to that broad power is the authority to establish a minimum drinking age within the state. The Secretary asserts, however, that the state's power to regulate alcohol is not exclusive and does not preclude Congress from addressing alcohol related problems of a nationwide (rather than purely local) nature.

* The HONORABLE WILLIAM H. TIMBERS, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

Specifically, the Secretary contends the law at issue falls within the scope of Congress's authority under the spending clause. By conditioning a small portion of a state's federal highway funds on the adoption of a minimum drinking age of twenty-one, Congress has attempted to enlist the state's cooperation in addressing an evil—drunk driving—that not only transcends state lines but, in Congress's view, is actually aggravated by state lines. Further, the Secretary argues that this law undermines no attribute of sovereignty retained by the state and in no way diminishes the state's power to regulate extensively the traffic, sale, manufacture, and consumption of alcohol within the state.

## II. Congress's Power Under the Spending Clause

■ Congress's power under the spending clause is a separate and distinct grant of legislative authority and is in no way limited by its other broad legislative powers. *Fullilove v. Klutznick,* 448 U.S. 448, 474, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980) (opinion by Burger, C.J.); *Buckley v. Valeo,* 424 U.S. 1, 90–91, 96 S.Ct. 612, 668–69, 46 L.Ed.2d 659 (1976) (per curiam); *United States v. Butler,* 297 U.S. 1, 65–66, 56 S.Ct. 312, 319, 80 L.Ed. 477 (1936). That power, when viewed in conjunction with the necessary and proper clause, is quite expansive, *Buckley v. Valeo,* 424 U.S. at 90, 96 S.Ct. at 668, and without question includes the authority to attach conditions to the receipt and further expenditure of federal funds, *see Fullilove v. Klutznick,* 448 U.S. at 474, 100 S.Ct. at 2772 (opinion by Burger, C.J.) (citing cases that uphold Congress's placement of conditions on the receipt of federal funds).

■ Congress's power under the spending clause is not, however, unlimited. First, in exercising that power, Congress must seek to further the well-being of the nation as a whole and not simply the well-being of a particular region or locality. *United States v. Butler,* 297 U.S. at 64–67, 56 S.Ct. at 318–19; *see also Helvering v. Davis,* 301 U.S. 619, 640–41, 57 S.Ct. 904,

908–09, 81 L.Ed. 1307 (1937); *Steward Machine Co. v. Davis,* 301 U.S. 548, 586–87, 57 S.Ct. 883, 890–91, 81 L.Ed. 1279 (1937). Further, any conditions imposed by Congress must be reasonably related to the national interest Congress seeks to advance. *See Massachusetts v. United States,* 435 U.S. 444, 461, 98 S.Ct. 1153, 1164, 55 L.Ed.2d 403 (1978) (opinion by Brennan, J.). Finally, these conditions must not violate any "independent constitutional bar," *Lawrence County v. Lead-Deadwood School District,* 469 U.S. 256, 105 S.Ct. 695, 703, 83 L.Ed.2d 635 (1985), or "controlling constitutional prohibition," *King v. Smith,* 392 U.S. 309, 333 n. 34, 88 S.Ct. 2128, 2141 n. 34, 20 L.Ed.2d 1118 (1968). *See also Buckley v. Valeo,* 424 U.S. at 91, 96 S.Ct. at 669.

South Dakota does not contend either that Congress acted unreasonably in concluding the national welfare is advanced by expending federal funds to develop and maintain a national highway system or that Congress could not reasonably believe drunk drivers represent a serious threat to the safe and uninterrupted use of these highways. Rather, South Dakota challenges the means adopted by Congress to further the nation's interest in safe highways.

In its debates over the bill that became 23 U.S.C. § 158, Congress evidenced the growing national concern over the problem of drunk driving. Virtually without exception, the members of Congress, while often disagreeing on what should or could be done about the problem, agreed that the problem of drunk driving disproportionately touches the lives of young adults. *See generally* 130 Cong.Rec. S8208–47 (daily ed. June 26, 1984); 130 Cong.Rec. H5395–407 (daily ed. June 1, 1984) (the House and Senate debates over the proposed legislation).

Significantly, as evidenced by their debates, most members of Congress also believed the problem of young adults drinking and driving is not purely a local or intrastate problem but rather is a problem

with substantial national and interstate ramifications. Specifically, as a result of the patchwork of differing state laws, young adults who are unable to consume alcohol legally in their home state often drive to states having lower drinking ages. Then, after consuming varying amounts of alcohol, these individuals attempt to return home, often with tragic and even fatal results. *See, e.g.,* 130 Cong.Rec. S8228 (daily ed. June 26, 1984) (statement of Sen. Mitchell); *id.* at S8239 (statement of Sen. Bradley and statement of Sen. Biden); *id.* at S8241 (statement of Sen. Huddleston and statement of Sen. Hollings); 130 Cong.Rec. H5395 (daily ed. June 1, 1984) (statement of Rep. Anderson); *id.* at H5398 (statement of Rep. Barnes); *id.* at H5402 (statement of Rep. Coats and statement of Rep. Porter).

Given this reality, Congress concluded that encouraging states to adopt a uniform minimum drinking age of twenty-one would not only increase the safety of our nation's highways and save thousands of lives but would also protect the valuable national resource represented by our nation's youth. Thus, as a means to achieving these ends, Congress conditioned a portion of each state's federal highway funds on the state's adoption of a minimum drinking age of twenty-one.

■ Giving appropriate deference to Congress's view of the national welfare and the means necessary to promote that welfare, *see Buckley v. Valeo,* 424 U.S. at 91, 96 S.Ct. at 669; *Helvering v. Davis,* 301 U.S. at 640–41, 644–45, 57 S.Ct. at 909-10, we believe Congress reasonably could have concluded the problem of young adults drinking and driving is not a purely local or intrastate concern but rather is a concern of interstate and national proportions. We further believe Congress, in its reasoned discretion, could determine that a uniform minimum drinking age would lessen that problem and improve the safety of our nation's highways for all Americans. Finally, we conclude Congress's decision to condition a portion of a state's federal highway funds on the adoption of a minimum drinking age of twenty-one is reasonably

related to Congress's interest in achieving a nationally uniform minimum drinking age. Leaving aside any specific constitutional prohibition, we find that section 158 falls within the scope of Congress's power under the spending clause.

South Dakota argues, however, that regardless of the apparent reasonableness of Congress's action, two independent and controlling constitutional provisions prevent Congress from exercising its spending power as it has in this instance. More specifically, South Dakota points to the twenty-first amendment and the tenth amendment as affirmative prohibitions on Congress's enactment of 23 U.S.C. § 158.

### III. The Twenty-First Amendment

■ South Dakota's argument under the twenty-first amendment focuses on section 2 of that amendment. That section provides:

> The transportation or importation into any State * * * for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. Const. amend. XXI, § 2. South Dakota contends that this provision represents an all encompassing and exclusive grant of authority to the states. South Dakota argues further that this grant effectively prohibits the federal government from enacting legislation of the type here at issue. We disagree.

■ As an initial matter, we reject the state's contention that its authority to establish a minimum drinking age flows from the twenty-first amendment. Both before and after the adoption of the twenty-first amendment, the Supreme Court has recognized the state's authority under its police power to regulate extensively the traffic, sale, manufacture, and consumption of alcohol within the state. *See, e.g., California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972); *Wisconsin v. Constantineau,* 400 U.S. 433, 436, 91 S.Ct. 507, 509, 27 L.Ed.2d 515 (1971); *Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 138–39, 60 S.Ct. 163, 166–67, 84 L.Ed. 128 (1939); *Crane v. Campbell,* 245 U.S. 304, 307, 38

S.Ct. 98, 99, 62 L.Ed. 304 (1917); *Crowley v. Christensen*, 137 U.S. 86, 91, 11 S.Ct. 13, 15, 34 L.Ed. 620 (1890); *Kidd v. Pearson*, 128 U.S. 1, 9 S.Ct. 6, 32 L.Ed. 346 (1888); *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887). Without question, that power includes the authority to determine the age at which young adults would be allowed to purchase and consume intoxicating liquor. *Cf. Craig v. Boren*, 429 U.S. 190, 210 n. 24, 97 S.Ct. 451, 463 n. 24, 50 L.Ed.2d 397 (1976); *Crowley v. Christensen*, 137 U.S. at 91, 11 S.Ct. at 15 (Under the state's police power "restrictions may be imposed as to the class of persons to whom [liquor] may be sold.").

■ In contrast with the state's position, we believe the twenty-first amendment was intended to effect a much narrower grant of authority. Specifically, the primary intent of the twenty-first amendment was to authorize the state (where it would otherwise be prohibited from doing so) to regulate directly the transportation or importation of liquor into the state, *see Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 330, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964); *State Board of Equalization v. Young's Market Co.*, 299 U.S. 59, 62, 57 S.Ct. 77, 78, 81 L.Ed. 38 (1936), in effect, to create "an exception to the normal operation of the Commerce Clause," *Craig v. Boren*, 429 U.S. at 206, 97 S.Ct. at 461 (cited with approval in *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 712, 104 S.Ct. 2694, 2707, 81 L.Ed.2d 580 (1984)); *see also* 76 Cong.Rec. 4140–41 (1933) (statement of Sen. Blaine).

Additionally, even in the area of the commerce clause, where the impact of the twenty-first amendment is clearest, the state's power to regulate liquor is not exclusive. Rather, the Supreme Court has repeatedly emphasized that, in addition to the state's broad authority to regulate liquor within the state, the federal government retains its authority under the commerce clause to regulate interstate commerce in liquor. *See, e.g., Capital Cities Cable, Inc. v. Crisp*, 467 U.S. at 713, 104 S.Ct. at 2708; *California Retail Liquor*

*Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 108, 100 S.Ct. 937, 944, 63 L.Ed.2d 233 (1980); *Nippert v. City of Richmond*, 327 U.S. 416, 425 n. 15, 66 S.Ct. 586, 590–91 n. 15, 90 L.Ed. 760 (1946); *United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 299, 65 S.Ct. 661, 664, 89 L.Ed. 951 (1945); *Jameson & Co. v. Morgenthau*, 307 U.S. 171, 172–73, 59 S.Ct. 804, 804–05, 83 L.Ed. 1189 (1939) (per curiam).

By analogy, if Congress's authority to legislate under the commerce clause is unaffected by the twenty-first amendment, we have little doubt that its authority under the spending clause is equally unaffected. At bottom, while the twenty-first amendment in no way increased Congress's authority to legislate with respect to liquor, the amendment did not limit or withdraw Congress's ability to exercise authority under its existing delegated powers, including the spending power.

■ South Dakota argues, however, that even if Congress is not excluded from adopting section 158, the statute must fall in the face of South Dakota's law to the contrary. Clearly, in the area of alcohol regulation, when state and federal law directly conflict, a balancing of the state and federal interests involved may result in state law prevailing over a conflicting federal enactment. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 104 S.Ct. 3049, 3058, 82 L.Ed.2d 200 (1984); *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. at 109, 100 S.Ct. at 945. Such a result appears most likely when the state law in question is "designed to promote temperance or to carry out any other purpose of the Twenty-first Amendment." *Bacchus Imports, Ltd. v. Dias*, 104 S.Ct. at 3058–59.

■ It is equally clear, however, that before a state law may be preferred over a federal law, the two laws must actually conflict with one another. This court may not seek out conflicts between federal and state law where none "clearly exists." *Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 45, 86 S.Ct. 1254, 1261, 16 L.Ed.2d

336 (1966) (quoting *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 446, 80 S.Ct. 813, 817, 4 L.Ed.2d 852 (1960)); *see also Rice v. Norman Williams Co.*, 458 U.S. 654, 659–61, 102 S.Ct. 3294, 3298–99, 73 L.Ed.2d 1042 (1982). Very simply, in this instance, no conflict exists.

Both the federal enactment and South Dakota state law are fully operative; neither law undermines the legal force and effect of the other. In fact, the federal law necessarily recognizes the state's power to reject Congress's judgment and adopt and legally maintain any drinking age it chooses. South Dakota is entirely free to maintain its law as it now exists and will violate no federal law if it chooses to do so.

We conclude the twenty-first amendment poses no bar to the law enacted by Congress.

## IV. The Tenth Amendment

The state also claims the tenth amendment prohibits Congress from exercising the spending power as it has in this case. Again, we disagree.

In *Oklahoma v. Civil Service Commission*, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947), the Supreme Court made clear that the tenth amendment is not violated when Congress conditions the receipt of federal funds on compliance with certain terms and conditions. *Id.* at 142–44, 67 S.Ct. at 552–54. That conclusion is not altered when (as is arguably the case here) the attached conditions implicate areas that Congress could not directly regulate under its other legislative powers. *Id.* at 143, 67 S.Ct. at 553.

Very simply, to the extent a state finds the conditions attached by Congress distasteful, the state has available to it the simple expedient of refusing to yield to what it urges is "federal coercion." *Id.* at 143–44, 67 S.Ct. at 553–54; *see Fullilove v. Klutznick*, 448 U.S. at 474, 100 S.Ct. at 2772; *South Dakota v. Adams*, 506 F.Supp. 50, 54–59 (D.S.D.), *aff'd sub nom. South Dakota v. Goldschmidt*, 635 F.2d 698 (8th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981).

Here, the same option is open to South Dakota.

The state's tenth amendment argument is further undermined by the Supreme Court's recent conclusion that the principal limitation imposed upon the exercise of an authorized or delegated power "is that inherent in all congressional action—the built-in restraints that our system provides through state participation in federal governmental action. The political process ensures that laws that unduly burden the states will not be promulgated." *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 1020, 83 L.Ed.2d 1016 (1985). Like the Court in *Garcia*, we conclude that "[i]n the factual setting of [this] case[] the internal safeguards of the political process have performed as intended." *Id.*

Regardless, South Dakota has failed to demonstrate how section 158 forces the state to restructure its governmental system or functions or impairs the state's integrity or ability to function effectively in the federal system. Further, South Dakota can hardly claim either a vested right in the federal funds being offered or the right to set the conditions on which the money will be provided. Rather, as stated above, South Dakota is entirely free to reject Congress's offer of federal highway funds and exercise in any way it chooses its authority to establish a minimum drinking age.

We hold that the tenth amendment is not offended by the congressional enactment here at issue.

## V. Conclusion

We conclude that the law challenged in this action, 23 U.S.C. § 158, falls within the scope of Congress's spending power and violates neither the twenty-first amendment nor the tenth amendment. We thus affirm the district court's dismissal of South Dakota's civil complaint.