Lisa B. WILLIAMS, Plaintiff–Appellee,

v.

U.S. MERIT SYSTEMS PROTECTION BOARD, Defendant–Appellant,

and

Office of Special Counsel; Governor's Office for Individuals with Disabilities, Defendants.

No. 94–1526.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1995.

Decided May 3, 1995.

As Amended June 9, 1995.

918

**ARGUED:** Sherry Ann Armstrong, Gen. Atty., Merit Systems Protection Board, Washington, DC, for appellant. Alfred Nance, Baltimore, MD, for appellee. **ON BRIEF:** Mary L. McCord Jennings, Deputy Gen. Counsel and David C. Kane, Asst. Gen. Counsel, Merit Systems Protection Board, Washington, DC, for appellant.

Before RUSSELL, WILKINSON, and WILLIAMS, Circuit Judges.

Reversed and remanded by published PER CURIAM opinion.

## OPINION

PER CURIAM:

The United States Merit Systems Protection Board (MSPB or the Board) appeals the district court's finding that Lisa B. Williams, a state employee, was not subject to the Hatch Political Activity Act (Hatch Act), 5 U.S.C. §§ 1501–1508 (1988). Because we find that Williams was a "covered employee" subject to the proscriptions of the Act, we reverse the district court's narrow interpretation of the Act and remand for further proceedings.

### I.

Between 1987 and 1994, Williams worked as Executive Assistant to the Director of the Governor's Office of Individuals with Disabilities (OID), an executive agency of the State of Maryland.[1] OID is a state-funded agency that administers several state programs, including the federally-funded Developmental Disabilities Council (DDC). During Williams's employment at OID, the time sheets, bills, federal invoices, and other expenditures of the DDC program were channelled through the OID where they were consolidated and "signed off" by the OID Director before being forwarded for payment to the State Financial Administration Office. Williams was authorized to sign the DDC financial status reports in the Director's absence and did so on several occasions.

In 1990, Williams ran as a partisan candidate for public office. In response, the Office of Special Counsel (OSC or Special counsel) for the MSPB sent Williams three different letters informing her that she was subject to the Hatch Act. These letters told Williams that running as a partisan candidate for public office would violate the Hatch Act and could result in her removal from employment at OID. Williams disagreed with the OSC and continued her ultimately unsuccessful run for office.

In February of 1992, the MSPB charged her with violating the Hatch Act. After a hearing before an administrative law judge (ALJ), the ALJ found that Williams was a covered employee subject to the Hatch Act because she signed invoices authorizing payment of federal funds. The ALJ further found that Williams violated the Hatch Act by running for office and that her violation was sufficient to warrant her removal from state employment. The MSPB adopted the ALJ's decision and ordered the OID to remove Williams from her employment at OID. On appeal from the administrative decision, the district court reversed and remanded, finding that Williams was not a "covered employee" because she did not exercise "dis-

---

1. The state agency employing Williams was originally entitled the Governor's Office of Handi-   capped Individuals.

cretionary or supervisory authority" over the use of federal funds.[2] The MSPB appeals.

## II.

### A.

The MSPB is the federal agency charged with enforcement of the Hatch Act. 5 U.S.C. § 1505 (1988). "The end sought by Congress through the Hatch Act is better public service by requiring those who administer funds for national needs to abstain from active political partisanship." *Oklahoma v. United States Civil Serv. Comm'n*, 330 U.S. 127, 143, 67 S.Ct. 544, 553, 91 L.Ed. 794 (1947). Decisions of the MSPB must be "in accordance with law" and are reviewed for abuse of discretion based on the administrative record; thus, the district court's decision enjoys a presumption of correctness.[3] 5 U.S.C. § 1508 (1988); *Oklahoma v. United States Civil Serv. Comm'n*, 330 U.S. at 145–46, 67 S.Ct. at 554–55; *Minnesota Dept. of Jobs and Training v. Merit Sys. Protection Bd.*, 875 F.2d 179, 182 (8th Cir.1989).

The issue before us is whether Williams was subject to the Hatch Act.[4] An "employee of a state agency is subject to the Hatch Act if, as a normal and foreseeable incident to [her] principal position or job, [she] performs duties in connection with an activity financed in whole or part by federal funds." *Special Counsel v. Gallagher*, 44 M.S.P.R. 57, 61 (1990); 5 U.S.C. § 1501(4). The Act does not cover state employees whose connection with federally-funded activities is "merely a casual or accidental occurrence" of employment, *In re Brown*, 3 P.A.R.

273, 300 (1974),[5] because such a *de minimis* connection does not justify application of the Act.

Partisan candidacy by a covered employee, however, is a *per se* violation of the Hatch Act. *Special Counsel v. Brondyk*, 42 M.S.P.R. 333, 337 (1989); 5 U.S.C. § 1502(a)(3) (1988). Williams does not dispute that, if she were subject to the Act, her candidacy would be a violation. However, she contends that she was not a covered employee under the Act.

Williams argues that the district court correctly determined that the Hatch Act only covers state employees who exercise supervisory or discretionary authority over the administration of federal funds. She contends that she did not exercise administrative or executive discretion over the use of federal funds because she merely "rubber-stamped" approval of invoices and payment request forms on the rare occasions when the Director of OID was absent. Thus, she argues the district court was correct in determining that any discretionary authority she may have exercised was *de minimis* and did not warrant a finding that she was covered under the Act. We disagree with the district court's interpretation, however, and believe that the plain language of the Act compels reversal.

The district court went beyond the plain language of the Act, and the decisions interpreting that language, when it determined that the actual exercise of supervisory or discretionary control over federally-funded activity was the requisite connection neces-

---

**2.** The district court also granted a preliminary injunction staying the MSPB order directing Williams's removal from state employment. We reversed that stay in an interlocutory appeal of the district court's order. *Williams v. United States Merit Sys. Protection Bd.*, 15 F.3d 46, 49 (4th Cir.1994).

**3.** Decisions of the Board reported in the Merit Systems Protection Board Reporter, M.S.P.R., are not binding authority on this court, but may be relied upon for their persuasive authority.

**4.** Section 1501 of the Hatch Act defines a "State or local officer or employee" as

an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in

whole or in part by loans or grants made by the United States or a Federal agency, but does not include—

(A) an individual who exercises no functions in connection with that activity.

5 U.S.C. § 1501(4) (1988).

**5.** The Political Action Reporter reports decisions of the United States Civil Service Commission, the predecessor of the MSPB. As with decisions of the Board reported in the Merit Systems Protection Board Reporter, the decisions reported in the Political Action Reporter are not binding authority on this court but may be relied upon for their persuasive authority.

sary for Williams to be subject to the Act.[6] This narrow interpretation of the scope of the Hatch Act has not been expressed in any published decision nor has it been adopted by the MSPB, the agency charged with enforcement of the Act. In reaching its conclusion, the district court relied on *Special Counsel v. Carter*, 45 M.S.P.R. 447 (1990), in which the ALJ, in his discussion whether Carter's "principal employment" under the Act was as a state employee, noted that Carter, as Executive Director of a local housing authority, had "supervisory and significant responsibilities in administering programs receiving federal funds." 45 M.S.P.R. at 452 (ALJ's recommendation). However, neither *Carter* nor the other decisions relied upon by the district court expressly state that the exercise of discretionary authority in connection with federally-funded activity is required to hold a state employee subject to the Act. Hatch Act cases are fact specific, and the mere fact that several state employees found in violation of the Act also held or exercised such discretionary authority does not indicate that the exercise of discretionary authority is a necessary requirement to being covered under the Act.

■ Williams's employment was "in connection with" federally-funded activities. There is no dispute that OID administered federal funds through its oversight of DDC, even though DDC determined the actual use of the funds. Williams's duties in connection with the federally-funded activities of DDC were normal and foreseeable incidents to her job as Executive Assistant to the Director of OID because she had placed a signature card on file indicating that she was authorized to approve expenditures in the Director's absence. Furthermore, the position description for her job indicated that she was expected to "assist the Director in the administration

and management of" the OID, a state agency with authority to oversee the activities of the DDC, a federally-funded state agency. Thus, it was foreseeable that Williams's normal job duties included authorizing DDC expenditures in the Director's absence.

There is no dispute that Williams approved the use of DDC funds on several occasions, although most of her duties at OID were apart from federally-funded activities. Williams signed her own name to approve payment of numerous DDC invoices, expense accounts, and grant payment requests. This connection was sufficient to place Williams under the Act because it was a "normal and foreseeable incident to [her] principal position or job," *Gallagher*, 44 M.S.P.R. at 61, and was more than "merely a casual or accidental occurrence" of her employment, *In re Brown*, 3 P.A.R. at 300. Therefore, we believe the district court's finding that the infrequency of these authorizations indicated a *de minimis* connection is simply not supported by the record or by the language of the Act. Sufficient evidence in the record supports the Board's conclusion that Williams's actions in connection with federally-funded activities were sufficient to subject her to the restrictions of the Hatch Act. *See Minnesota Dept. of Jobs and Training*, 875 F.2d at 182 (when "reasonable basis" exists for Board's conclusion, a reviewing court must "defer to that conclusion as being within the discretion of the Board").

■ For the above reasons, we find that the Board's determination that Williams was subject to the Hatch Act is in accordance with the law, and reverse the district court on this issue.[7]

### B.

Having found that Williams violated the Hatch Act by running for public office as a

6. Because Williams had not actually exercised discretionary authority, such as by refusing to sign request forms or invoices from DDC, the district court concluded she was not covered by the Act, even though Williams had signed forms authorizing DDC's use of federal funds.

7. We reject Williams's argument that application of § 1502 of the Hatch Act, which prohibits covered state employees from running for partisan office, violates her First Amendment rights to

free speech and has a chilling effect on her right to partisan political expression. "[T]he Supreme Court has consistently found that the Hatch Act is constitutional and does not violate the First Amendment." *Williams*, 15 F.3d at 49 (rejecting a similar argument under § 1508) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)).

partisan candidate while she was a state employee subject to the Act, we must determine whether removal from employment was the appropriate penalty for that violation.[8] Williams contends that the Board abused its discretion in determining that removal was appropriate, and that she should be allowed to return to her position at OID.

■■■ Congress has determined that the only penalty for violation of § 1502 of the Hatch Act is removal.[9] 5 U.S.C. § 1505(2) (1988). The Board has discretion to determine whether removal, or no penalty at all, is warranted. *See Oklahoma v. United States Civil Serv. Comm'n*, 330 U.S. at 146, 67 S.Ct. at 555 (finding that the question whether to remove a state officer or employee as a penalty for violating the Hatch Act "is a matter of administrative discretion"). Whether removal is appropriate depends upon the seriousness of the violation, taken in consideration with all relevant mitigating and aggravating factors. *Brondyk*, 42 M.S.P.R. at 337; *Special Counsel v. Purnell*, 37 M.S.P.R. 184, 200 (1988), *aff'd sub nom. Fela v. United States Merit Sys. Protection Bd.*, 730 F.Supp. 779 (N.D. Ohio 1989).

■■■ "[C]andidacy for partisan political office is ... one of the most conspicuous and unequivocal violations of the Hatch Act," usually warranting removal unless strong mitigating factors are shown. *Brondyk*, 42 M.S.P.R. at 337. The Board adopted the ALJ's determination that Williams's violation warranted removal because it was "serious and partisan in color," (J.A. 235), and because she ignored repeated warnings by the Special Counsel that her candidacy would violate the Hatch Act, which the ALJ also considered an aggravating factor. The Eighth Circuit has upheld a partisan candidate's removal from state employment when he also ignored similar repeated warnings that his candidacy would violate the Hatch

Act. *Minnesota Dept. of Jobs and Training*, 875 F.2d at 183; *see also Brondyk*, 42 M.S.P.R. at 338–39 (removal because state employee violated Hatch Act by running for office despite two warnings by Special Counsel).

■■■ The Board agreed with the ALJ that the aggravating factors of Williams's offense outweighed any mitigating factors. Although Williams received advice from state officials that her candidacy would not violate the Act, the fact that she ignored repeated warnings to the contrary by Special Counsel offset that evidence. The serious and conspicuous nature of her violation, despite these repeated warnings, was sufficient to outweigh the mitigation of her clean employment record and the fact that she did not run again for public office while employed by the OID. Because the Board's decision to remove Williams from state employment was in accordance with law, and because the Board did not abuse its discretion in reaching that decision based on a careful weighing of the mitigating and aggravating factors, we conclude that the Board acted properly in removing Williams from state employment. We therefore reverse the district court's decision and remand this case to the district court for entry of an order affirming the Board's decision.

### III.

For the foregoing reasons, we reject the district court's determination that, in order to be subject to the Hatch Act, Williams had to exercise supervisory or discretionary authority in connection with the use of federal funds. Instead, we affirm the Board's determination that a state employee who approves the expenditures of a federally-funded state agency as a normal and foreseeable part of her employment has performed sufficient duties in connection with a federally-funded activity to be subject to the provisions of the

---

8. The district court did not address whether Williams's removal was appropriate because it found that Williams was not subject to the Hatch Act, and in reversing the Board's decision it also reversed the penalty imposed by the Board. However, we may review the Board's decision for abuse of discretion based on the administrative record, and affirm that decision if it is "in accordance with law." 15 U.S.C. § 1508 (1988).

9. When removal is ordered, the employing state agency may chose to remove the employee, or it may instead forfeit receipt of federal funds in an amount equal to the employee's pay over a two-year period. 5 U.S.C. § 1506(a) (1988).

Hatch Act. Finally, we affirm Williams's removal from state employment as a penalty for violating the Hatch Act. Accordingly, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

*REVERSED AND REMANDED.*