Dear Robert E. Watson, Esquire
On behalf of the Mayor and Town Council of Mountain Lake Park, you have requested our opinion on three questions related to service on the Town Council by an employee of the Town, particularly with reference to the State "anti-Hatch Act," which preserves the right of municipal employees to engage in political activity. Specifically, you ask:
1. Does the State anti-Hatch Act preempt a local prohibition — such as formerly appeared in the Town Charter — against Town employment of a Council member?
2. If the Town were to restore that prohibition to the Charter, could a member of the Town Council who is currently a Town employee continue to serve on the Council?
3. Does the common law doctrine of incompatible positions preclude the Town's Supervisor of Streets from serving on the Town Council?
In accordance with our guidelines for issuing opinions in response to requests from municipalities, you have provided us with a copy of your own analysis and opinion on these questions. We have carefully reviewed the matter and agree with your conclusion as to the third question that service on the Town Council is not incompatible with employment as Supervisor of Streets.[1] However, we respectfully disagree with your conclusion that the anti- Hatch Act preempts a local prohibition against municipal employment of elected officials. In our opinion, while the anti-Hatch Act preserves the right of Town employees to run for office, it does not preempt a Charter restriction on Town employment of elected officials.
 I Background
A. The anti-Hatch Act
Since 1973, a State law commonly referred to as the "anti-Hatch Act" has preserved the right of State and local employees to express political views and to choose whether to participate in political campaigns. Chapter 796, Laws of Maryland 1973. The part of that Act applicable to local government employees is now codified at Annotated Code of Maryland, Article 24, § 13-101 et seq. The Act states that employees of local government entities "may freely participate in any political activity and express any political view." § 13- 103(1). Conversely, local government employees "may not be required to provide political service." § 13-103(2). There are two exceptions to these general guarantees: an employee may not engage in political activity during working hours and may not advocate overthrow of the government by violent or unconstitutional means. § 13-105. The Act explicitly preempts conflicting local constraints:
 Notwithstanding any other law of this State effective on or before June 30, 1973 or any local law, the restrictions imposed by this title are the only restrictions on the political activities of an employee of a local entity. . . .
§ 13-104 (emphasis added).
B. Charter Prohibition Against Employment of Council Members
Prior to 1998 the Town Charter included the following provision:
26.54 Authority to employ personnel.
 The Town shall have the power to employ such officers and employees as it deems necessary to execute the powers and duties provided by this charter or other State law and to operate the town government provided no member of the council be employed by the town or do business with the town.
(emphasis added.) In 1998 the Town amended this provision to remove the prohibition against Town employment of a Council member.[2] We understand that the Town Council is now considering whether to restore that prohibition to the Charter.
 II Analysis
You have asked for our opinion whether the former language of § 26-54 of the Town Charter that barred Council members from Town employment conflicted with § 13-103 of the anti-Hatch Act and, accordingly, was preempted by § 13-104 of the Act. As a corollary, you ask whether a Town employee who currently sits on the Council could continue to serve if the prohibition were restored to the Charter.[3]
The anti-Hatch Act was designed to protect political expression and participation. Originally enacted as part of the State Election Code, it applied to both State and local employees and provided:
 Participation in politics or political campaigns and the free expression of political opinions by employees. . .shall not be prohibited, and each employee shall retain all rights and obligations of citizenship. . .; however, no such employee shall:
 (a) engage in political activity while on the job during working hours;
 (b) advocate the overthrow of the government by unconstitutional and violent means; or
 (c) be obligated to contribute or render political service.
Chapter 796, Laws of Maryland 1973, codified at Former Article 33, § 28-1.[4] When the new State Personnel and Pensions Article was adopted in 1993, the portion of the anti-Hatch Act applicable to State employees was recodified as part of that article; the portion applicable to local employees was revised and moved to Article 24, § 13-101 et seq. Chapter 10, § 6, Laws of Maryland 1993. The language of the Act was revised slightly — for example, the term "political activity" was substituted for the terms "politics or political campaigns" — without substantive change.See id., Revisor's Notes at pp. 855-58.
In our opinion, there is a distinction between the right to engage in political activity preserved by the anti-Hatch Act and service in a public office. This Office has consistently construed the anti-Hatch Act to invalidate local restrictions on the ability of a State or local government employee to run for office as opposed to restrictions on the ability to hold
simultaneously both the elective office and other government employment.[5] See, e.g., Opinion No. 88-014 (March 1, 1988) (unpublished) (town employee may run for office of mayor but, if successful, common law doctrine of incompatible positions would preclude service in both positions); 63 Opinions of the AttorneyGeneral 284 (1978) (anti-Hatch Act preempts county ordinance requiring county employees to resign employment in order to run for office); Letter of Assistant Attorney General Richard E. Israel to the Honorable Kevin Kelly (May 19, 2000) (although anti-Hatch Act permits State police officer to run for local Commissioner of Public Safety, municipal charter provisions and State ethics law could bar simultaneous service in both positions).
A similar distinction was drawn by a legislative task force that studied limitations on dual office-holding. See Report of the Task Force to Study Dual Office Holding (December 15, 1995) ("Task Force Report"). The Task Force Report stated:
 Dual office restrictions only affect an officer's ability to serve in another office. In fact, with limited exceptions, Maryland's "anti-Hatch Act" preserves the right of State and local personnel to run
for office.
Task Force Report, Appendix D, p. 7 (emphasis added). Thus, the Task Force concluded that the anti-Hatch Act permitted an office-holder to run for another office, even if there was a prohibition against holding the two offices simultaneously.
In other words, consistent with the anti-Hatch Act, the Town Charter may not prohibit a Town employee from running for elective office in the Town. However, a Charter prohibition against Town employment of a Council member does not prevent a Town employee from running for office. Rather, if the employee succeeds and wins election to a position on the Council, such a Charter provision requires that the employee choose between service on the Town Council and continued employment with the Town. Nothing in the anti- Hatch Act bars the Town from forcing such a choice by forbidding its elected officials to do business with or be employed by the Town.
If the Town were to restore the Charter's former prohibition against employment of Council members, a Town employee who is currently on the Council would not be barred from continued service on the Council. However, it would require that person to make an election between continued employment with the Town and continued service on the Council.
 III Conclusion
In our opinion, the prohibition that formerly appeared in the Town Charter against service on the Town Council by a Town employee did not conflict with the State anti-Hatch Act. If the Town were to readopt that provision as part of its Charter, a current member of the Council who is employed by the Town would have to choose between continued service on the Council and continued employment by the Town.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] In particular, you indicate that the Town Council does not have the power to appoint or remove the Supervisor of Streets, does not directly set the salary of that position, and generally does not exercise a supervisory role with respect to the position, which largely performs ministerial functions. Accordingly, under the reasoning of Hetrich v. County Commissioners, 222 Md. 304,308, 159 A.2d 642 (1960), the positions of Council member and Supervisor of Streets do not appear to be incompatible. However, for the same reasons set forth in the body of this opinion, we disagree with your alternative conclusion that the common law rule against the holding of incompatible positions has been abrogated by the anti-Hatch Act.
[2] The 1998 amendment was apparently initiated when the Supervisor of Streets stood for election to the Town Council. In an advice letter requested by Delegate Edwards, this Office identified the prohibition in the Town Charter as the primary obstacle to service on the Council by that employee. Letter of Assistant Attorney General Robert A. Zarnoch to Delegate George C. Edwards (July 27, 1998).
[3] Because your questions pertain to a municipal charter prohibition, we do not discuss other provisions that may limit the ability of some government employees to seek or to hold office. For example, the State Constitution restricts dual office-holding.See Maryland Declaration of Rights, Article 35. In addition, the federal Hatch Act prohibits certain State and local government employees who work in programs financed in whole or part by federal funds from, among other things, running for partisan elective office. See 5 U.S.C. § 1502(a)(3); Williams v U.S. MeritSystems Protection Board, 55 F.3d 917 (4th Cir. 1995).
[4] There is no available legislative history concerning Chapter 796.
[5] A brief passage in a 1978 opinion might be read to suggest that the anti-Hatch Act sweeps more broadly. See 63Opinions of the Attorney General 296 (1978) ("Maryland law seems clear that State employees are free to hold office. . ."). However, that opinion actually concerned the ability of State employees to hold party office and to run for elective office with reference to the federal Hatch Act and in the absence of any dual office-holding restrictions. See id. at p. 304 n. 1.
 *Page 183